**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Clinton TYLER, Defendant-Appellant.**

No. 73–3320.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1975.

---

Sam W. Kleinfeld, Miami, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael Patrick Sullivan, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Robert Clinton Tyler was indicted below under Counts I and V of a five-count indictment charging violations of narcotics laws. Count I charged that Tyler and two others conspired to possess cocaine with the intent to distribute it, in violation of Title 21, U.S.C. Sec. 846. Count V charged that Tyler and one of the alleged co-conspirators, Ramon Armand, actually possessed approximately 823 grams of cocaine with the intent to distribute it, in violation of Title 21, U.S.C. Sec. 841(a)(1). From jury verdicts of guilty on both counts and judgments of conviction entered thereon, Tyler brings this appeal. We reverse.

### The Facts

Government agents had been observing and negotiating with Tyler's alleged co-conspirator, Ramon Armand, from February 1 to March 29, 1973, hoping to uncover Armand's source of cocaine. During this period a government agent had made one purchase of approximately 378 grams of cocaine from Armand. On March 29, Armand met government undercover agent Gillis at a Denny's Restaurant in North Miami, Florida, and the two discussed possible purchase by Gillis of two kilograms of cocaine from Armand.

Details were arranged for a transaction to take place later that evening. Armand stated that he was obtaining cocaine from a "new source." Armand and Gillis, pursuant to these arrangements, met at Armand's apartment at approximately 5:30 that afternoon. The

agreement called for Gillis at this point to pay Armand the $25,000 purchase price for the cocaine in advance and wait in the apartment while Armand left to obtain the cocaine, return and deliver it to Gillis. But Gillis now indicated that he wished to see a sample of the cocaine before parting with the $25,000. Armand agreed with this. After pausing to count the money, he left in his automobile, ostensibly to get the cocaine sample.

Armand was under surveillance from the time that he left his apartment. Government agents testified that he drove to a garage apartment, later identified as the appellant Tyler's residence. Armand parked his automobile and ascended the stairs to the apartment, where he disappeared from the agent's view. Within about five minutes Armand left the apartment and reentered his automobile, driving around the streets near Tyler's apartment for a short while. He then returned to the apartment and talked briefly with an individual on the street corner. There is conflicting testimony whether this individual was the appellant Tyler.[1] Armand then went upstairs once more to Tyler's apartment.

Shortly thereafter, Armand came down from the apartment followed by Tyler. Armand in his car and Tyler in his van drove to the vicinity of Armand's apartment. Once there, Armand parked near his apartment and joined agent Gillis in Gillis's automobile. Tyler parked his van some distance behind Armand's car, got out and stood waiting with a Chivas Regal liquor carton under his arm. Gillis testified that he asked Armand where the cocaine sample was and Armand replied that he had brought the entire quantity with him and that his source was also with him, gesturing in Tyler's direction. Gillis immediately placed Armand under arrest and radioed other agents to close in and arrest Tyler.

Agent Hill approached Tyler and informed him that he was under arrest. After advising Tyler of his right to remain silent, Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Hill asked Tyler whose "stuff" he had in the Chivas Regal carton. Tyler responded that it was his. Examination of the contents of the carton revealed a plastic bag containing what was later proved to be the 846 grams of cocaine. Hill then asked Tyler "Who is the man?" and "Where's the other kilo at?" At this point, according to Tyler's testimony, he responded "Right now I really don't know what you're talking about, because I really am not going to answer any questions, because I don't know what you're talking about."

At trial, Tyler explained his refusal to answer questions with the following: "I didn't know what was going on and he [Agent Hill] was telling me anything I said might be used against me." Tyler explained his possession of the Chivas Regal carton containing the cocaine by stating that a fellow musician, Pepe Rodriguez had introduced him to Armand one afternoon at a rehearsal session. The following day, Pepe brought the Chivas Regal carton with him to Tyler's apartment where another rehearsal was scheduled. As Pepe prepared to leave the apartment later in the day, he explained to Tyler that he was expecting his friend Ramon (Armand) to come by and asked Tyler if he would mind giving Ramon the Chivas Regal carton when he came. Tyler agreed and placed the carton on a table in the corner of his living room. Tyler testified that the carton was "all folded up and sealed up like it was new." Only moments after Pepe left, Ramon arrived at the apartment and asked where Pepe was. Tyler responded that he had just left. The two went onto the stair landing to see if they could not overtake Pepe, but he was nowhere to be seen. Ramon then asked

---

1. Two surveilling government agents saw the meeting. One testified that the person with whom Armand met was definitely the appellant Tyler. The other agent testified that the individual was not the appellant.

whether Pepe had left anything for him, to which Tyler answered that he had and indicated the Chivas Regal carton in the corner of the living room. Ramon then asked Tyler whether he would like to come to Ramon's apartment to join some friends for some drinks, and Tyler answered that he would. Ramon then told Tyler to bring the Chivas Regal carton and to follow him. As it turned out, the party at Armand's was a bust.

### Issues on Appeal

Tyler urges that reversible error occurred in the trial below in two respects. The first ground is that hearsay testimony as to Armand's identifying him as his source was improperly allowed to go to the jury. The government did not call Armand to the stand to testify, although he was apparently in custody in Miami and available at the time of trial. Tyler contends that there was insufficient independent evidence of his participation in a conspiracy with Armand to warrant admission of the hearsay under the co-conspirator exception to the hearsay rule. He asserts further that introduction of the hearsay denied him his Sixth Amendment right to confront and cross-examine the witnesses against him. Cf. Dutton v. Evans, 1970, 400 U. S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213. Because we decide the case on the co-conspirator exception to the hearsay rule, we find it unnecessary to reach this alternative contention.

We determine that there was an insufficient independent showing that Tyler entered into a conspiracy to distribute cocaine to permit admission of Armand's statement under the co-conspirator exception to the hearsay rule. The test of admissibility of such hearsay is whether the government has, through independent evidence, established a prima facie case of conspiracy. United States v. Oliva, 5 Cir. 1974, 497 F.2d 130, and cases cited therein. One of the essential elements of a conspiracy charge is an intent to agree to do a

wrongful act. Absent a showing of this intent, one may not be convicted of conspiracy.

The element of intent must usually be proved by circumstantial evidence. Nonetheless intent must be shown, and a conviction upon the basis of association alone may not stand. United States v. Martinez, 5 Cir. 1973, 486 F.2d 15; Panci v. United States, 5 Cir. 1958, 256 F.2d 308. Here, the only independent proof of concerted action was testimony as to Armand's visits to Tyler's apartment in the hour immediately preceding their arrest. There was no evidence as to what transpired inside Tyler's apartment. Further there was no showing that Tyler and Armand had engaged in prior transactions or that Tyler had in any way been involved in illicit drug traffic. In fact, government agents testified that in the two months that they had been contacting and surveilling Armand they had never seen Tyler or been led to his apartment.

It may be that Tyler was in fact the source of the cocaine. However, it is equally possible that Tyler's exculpatory story is true. In either case, the jury should be asked to evaluate the credibility of Tyler's story in the absence of the damning comment of the alleged co-conspirator and known drug pusher Ramon Armand unless the government is able to come forth with more substantial evidence of actual existence of a conspiracy, or alternatively, unless Armand is called to the stand and directly gives evidence of Tyler's participation.

For the trial judge's failure to exclude the hearsay from the jury's consideration we reverse and remand for a new trial. The case should not be re-tried unless the government attorney makes an advance representation to the trial judge that it has substantial independent evidence—in addition to that offered at this trial—of Tyler's participation in a conspiracy to distribute cocaine.

The second ground urged as reversible error by Tyler is that the trial judge al-

lowed the prosecutor, during closing argument to the jury, to comment on Tyler's failure to make to the arresting officers the exculpatory explanation of his possession of cocaine offered by his trial testimony. Because we reverse on the hearsay issue, it is unnecessary to decide whether this comment was proper in the circumstance of the trial. We note, as did the trial judge, that Tyler himself testified that he declined to answer questions from the arresting officer both because he was confused and because he had been warned that anything he said might be used against him at trial. In this setting it may well have been permissible, as the trial judge held, for the prosecution to cast doubt upon Tyler's testimonial explanation by commenting on his failure to offer such an explanation at the time of his arrest. We do not anticipate that this circumstance is likely to recur at a subsequent trial.

As to whether such prosecutorial comment might pass muster where the defendant has not raised the issue of his failure to answer questions *sua sponte*, we reach no conclusion. The government argues that such comment would be permitted under this court's decision in United States v. Ramirez, 5 Cir. 1971, 441 F.2d 950. A possible factual difference may distinguish this case from *Ramirez*. The *Ramirez* opinion does not indicate whether the defendant there was given the *Miranda* warnings. Miranda v. Arizona, supra. The court's reliance on Harris v. New York, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, might be taken as an indication that no *Miranda* warnings were given since *Harris* involved a statement taken with-

out adequate *Miranda* warnings, whose use for impeachment in rebuttal was sanctioned. The Supreme Court expressly ruled in *Miranda* that comment on silence at the time of arrest is impermissible. 384 U.S. at 468 n. 37, 86 S.Ct. at 1624, 16 L.Ed.2d at 720.[2] Whether *Ramirez* does indeed control in the circumstances here presents a close question which we find unnecessary to decide in this case.

■ Finally, the United States suggests that since concurrent sentences within the statutory maximum were imposed, we should here apply the "concurrent sentence" doctrine[3] and thereby preserve intact the conviction under Count V for possession of cocaine with intent to distribute, under Title 21, U.S. C., Sec. 841(a)(1). This suggestion will not stand analysis.

The conviction under Count V was also fatally infected with Agent Hill's hearsay testimony as to Armand's statements implicating Tyler. Tyler's testimony admitted possession of the Chivas Regal package when he was approached and arrested by Agent Hill. But he offered an innocent explanation for that possession and denied an intent to distribute the substance or even knowledge of the contents of the package. Indeed, as to Count V the government did not have the claimed benefit of the co-conspirator hearsay rule. On *a fortiori* grounds, the conviction under that count must fail. Tyler, we hold, is entitled as to Count V also to have the question of his guilt considered without Agent Gillis's hearsay testimony of Armand's statements being brought out before the jury.

Reversed and remanded.

2. See Agnellino v. New Jersey, 3 Cir. 1974, 493 F.2d 714, 728 (Seitz, C. J. concurring); contra, id. at 719, n. 14 (Hunter, C. J. for the court).

3. For an example of this court's application of the doctrine see, United States v. Vigo, 5 Cir. 1970, 435 F.2d 1347, 1352.