**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Felipe Gonzalez ALANIS, Defendant-Appellant.**

No. 79–5066.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1980.

---

Roland E. Dahlin, II, Fed. Public Defender, Karen K. Brown, Asst. Fed. Public Defender, Houston, Tex., for defendant-appellant.

John M. Potter, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

On June 20, 1978, the Grand Jury charged the Appellant, Felipe Gonzalez Alanis, with conspiracy to unlawfully transport a stolen motor vehicle in interstate commerce, knowing the vehicle to be stolen, in violation of 18 U.S.C. §§ 371 and 2312, and with disposing of a motor vehicle, which was part of interstate or foreign commerce, knowing the vehicle to have been stolen, in violation of 18 U.S.C. § 2313. Alanis now appeals from a conviction on the second count. We affirm.

The evidence, taken in the light most favorable to the jury's verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), came predominantly from the testimony of FBI Special Agent Rudolph Valadez. According to Agent Valadez, during the time in question he was engaged in an undercover operation along the Texas-Mexico Border. His task was to develop intelligence concerning the transporting of stolen property to Mexico. Pursuant to his mission, Agent Valadez assumed the role of a buyer and seller of stolen property. In this role, he became acquainted with a "major fence" of stolen property, Jesus Pedro Proa.[1] Valadez testified that prior to the instant transaction, he had purchased several items of stolen property from Proa. During the nine month period during which Agent Valadez operated undercover, he spent a total of $11,000 to purchase stolen property which had a retail value of $2.2 million.

The transaction involved in this appeal occurred on October 24, 1977. Proa had informed Valadez that he had a stolen rental car for sale. Valadez met Proa at the latter's store in McAllen, Texas. Parked nearby was a 1977 Chrysler Cordoba, which had recently been stolen from a Hertz Rental lot in Denver, Colorado.[2] Valadez then drove Proa in the former's car to a drug store in McAllen after being told by Proa that two other individuals were waiting there. When Valadez and Proa arrived, the two individuals waiting at the drug store sat in the back seat of Valadez' car. One of the men, who introduced himself as "Felipe," told Valadez that Proa wanted $800 for the Cordoba. Valadez then told the three men that he was a buyer and seller of stolen property and that he operated in Mexico. He told them that he was only interested in large scale operations. The man named Felipe told Valadez that they had connections in Houston who could provide stolen property. Specifically, Felipe told Valadez about a shipment of stereo equipment which had been stolen from the dock in Houston.

Following Felipe's statement that he would take the money, Valadez handed him eight hundred dollar bills. Proa gave Valadez the keys to the Cordoba. Valadez then drove them back to Proa's store. Felipe and the other individual then departed in a pickup truck driven by Felipe. A license check of the pickup revealed that the owner was Felipe Gonzalez Alanis, the Appellant in this case. Additionally, Agent Valadez identified the Appellant in open court as the same "Felipe" whom he met in his car.

The Appellant did take the stand in his own defense and stated that a man named Berto gave him a ride in a white Cordoba. The Appellant, however, denied that he had driven the car, that he had received any money and that he knew Proa.

During the initial stage of the trial, the District Judge conducted a hearing outside of the presence of the jury to determine the existence of a conspiracy pursuant to this court's ruling in *United States v. James*, 576 F.2d 1121 (5th Cir. 1978), *modified en banc*, 590 F.2d 575 (5th Cir. 1979). The trial court, while expressing reservations on the

---

1. Jesus Proa was a co-defendant in the present case. At the time of the Appellant's trial, Proa was a fugitive, and he is still a fugitive as of this date.

2. The Government introduced the testimony of Carolyn Henson, who was an inventory clerk for the Hertz Corporation in Denver, Colorado. Ms. Henson testified that the Cordoba involved in this case was owned by the Hertz Corporation and that it had been stolen from the Hertz lot in Denver. Ms. Henson testified that there was no possibility that the Appellant could have legally come into possession of the car.

conspiracy count, held that a preponderance of the evidence indicated the existence of a conspiracy sufficient to allow the conspiracy testimony to be brought before the jury. Following the presentation of the Government's case in chief, defense counsel moved for a Judgment of Acquittal on both counts. The Trial Court granted defense counsel's Motion as to the conspiracy count but denied it as to the substantive count. In closing argument, the prosecutor asked the jury whether Valadez or Alanis had more to lose by not being truthful. The prosecutor also stated that in his personal belief he could not accept the testimony of Alanis. In the District Judge's charge to the jury, he intentionally deleted any reference to the conspiracy count without objection by either side. The jury then returned a guilty verdict on the only remaining count. The Defendant was sentenced to three years in the custody of the Attorney General.

The Appellant now raises three points of error. No objection was tendered to any of these points during the trial. Because there was no contemporaneous objection, reversal must be based upon plain error. *See United States v. Cook*, 592 F.2d 877, 879 (5th Cir. 1979). As his first point of error, the Appellant contends that the testimony of Agent Valadez regarding Proa severely prejudiced his rights to a fair trial. The Appellant also contends that this testimony amounted to the use of extrinsic evidence to prove bad character in violation of Rules 404(a) and (b) of the Federal Rules of Evidence. Second, the Appellant claims that the prosecutor's remarks in closing argument were prejudicial. Third, the Appellant asserts that the trial judge's failure to instruct the jury to disregard co-conspirator hearsay statements introduced against the Defendant amounted to plain error in light of the court's dismissal of the conspiracy count.

### I. The Testimony of Agent Valadez

■■ Alanis contends that the testimony of Agent Valadez concerning the latter's undercover mission, his duty to identify major fences and his dealings with Proa was inadmissable as being highly prejudicial as well as amounting to use of extrinsic evidence introduced to prove bad character in violation of Rules 404(a) and (b) of the Federal Rules of Evidence. Alanis attempts to analogize the case law dealing with the introduction of evidence of a co-defendant's guilty plea with the instant circumstances. Alanis is correct in his assertion that the introduction of evidence of a co-defendant's guilty plea is plain error and reversible even in the absence of an objection at the trial court. *See United States v. Miranda*, 593 F.2d 590, 595–96 (5th Cir. 1979); *United States v. Handly*, 591 F.2d 1125, 1128 (5th Cir. 1979). This doctrine, however, is of no avail to the Appellant in the present case. No evidence was introduced as to any judicial determination of Proa's guilt. Additionally, the Government had a right to question Agent Valadez on his reasons for being in South Texas at the time. The agent's introductory testimony concerning Proa's extensive involvement with stolen property in no way implicated the Appellant in any activities other than the one for which he was indicted and convicted. The discussion concerning Proa's operations may have caused some prejudice to the Appellant's case, but it was not so basic nor so prejudicial as to amount to plain error. Rule 404 of the Federal Rules of Evidence has no relevance to the present set of facts, and, thus, the Appellant's challenge on that ground is wholly without merit.

### II. Prosecutorial Remarks

■ The Appellant's next challenge concerns the prosecutor's final argument. Basically, the Government argued to the jury that Alanis had more to lose than the agent by not lying. The Government also told the jury that "I don't believe the Defendant. . . ." To satisfy the requirements of reversal, the prosecutorial misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir. 1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978). Clearly, an attorney may not ex-

press his personal opinion as to the credibility of witnesses or his own belief regarding a defendant's guilt. *See United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). This is even more true when it involves a public position of trust and integrity such as that of a government prosecutor. Nonetheless, such prosecutorial comment can often be rendered harmless by a curative instruction if requested by the defense. The defense in this case failed to make such a request. Although the comments by the prosecutor were error, they did not amount to plain error. Since, upon an examination of the entire record, the Defendant did not suffer substantial prejudice, the error must be considered harmless. *See United States v. Morris*, 568 F.2d at 402.

### III. The Co-Conspirator's Statements

The Appellant's final challenge concerns the admission of hearsay statements of an alleged co-conspirator following the trial court's dismissal of the conspiracy count. The only hearsay statements which were elicited at trial concerned Pedro Proa's offer to Agent Valadez to purchase a stolen rental car, Proa's comments concerning the Cordoba and Proa's remark that two individuals were waiting at a drug store in McAllen. The remainder of Agent Valadez' testimony concerned his direct contact and conversations with the Appellant. No objection was made to the introduction of the hearsay statements, no request for cautionary instructions was tendered, and no motion to strike the statements was ever made. Additionally, after dismissing the conspiracy count, the trial judge specifically informed counsel for both sides, outside of the presence of the jury, that he would not charge the jury on conspiracy. Again, no objection was. made nor any request made to exclude the statements.

Under the prior case law, before hearsay declarations of a co-conspirator could finally go before the jury, the Government was required to introduce sufficient independent evidence to establish a prima facie case of the existence of a conspiracy and of the individual defendant's participation therein. *See United States v. Oliva*, 497 F.2d 130, 132–33 (5th Cir. 1974). The trial court had the discretion in determining the order of admission of proof, but there was a minimum obligation upon the court to give a cautionary instruction on the limited uses of hearsay testimony. *See United States v. Apollo*, 476 F.2d 156, 163 (5th Cir. 1973). Such instructions should have been given at the time of the introduction of the evidence as well as during the final charge.

In complete fairness to the Trial Judge, matters became complicated for reasons beyond his control. First, the trial in this case commenced on September 21, 1978, only two months after the panel decision of July 20, 1978, in *United States v. James*, 576 F.2d 1121 (5th Cir. 1978), *modified en banc*, 590 F.2d 575 (5th Cir. 1979), which overruled *Apollo*.[3] Thus, on what the Judge presumably had before him it would have been error to give the *Apollo* instructions. Apparently, counsel were of like mind. In the meantime, this Court on August 7, 1978, granted rehearing *en banc* in the *James* case. Whether the Judge or counsel knew of this event or its possible consequences is not reflected. It was not until October 20, 1978, that this Court's amended Rule 17 became effective.[4] It was still later when this Court affirmed its long-standing practice in such situations in an opinion on September 13, 1979. *United States v. Gutierrez-Barron*, 602 F.2d 722 (5th Cir. 1979).

---

**3.** The panel decision in *James*, which was subsequently modified by the Fifth Circuit sitting en banc, required that the trial court make a threshold determination of the admissibility of the evidence outside of the presence of the jury. The court would make that determination upon a preponderance of the evidence, 576 F.2d at 1130, and it had to be established by independent evidence. *Id.* at 1131. Once the court was satisfied that the statements were admissi-

ble, they could then be considered by the jury along with all the other evidence in the case. *Id.* at 1132.

**4.** Amended Local Rule 17 of the Fifth Circuit provides in pertinent part:

Unless otherwise expressly provided, the effect of granting a rehearing en banc is to vacate the previous opinion and judgment of this Court and to stay the mandate.

Technically, therefore, *Apollo* was the law of the Circuit at the time of the instant trial.

■ In *Gutierrez-Barron*, we declined to hold the Judge in error in following *Apollo* rather than the panel decision in *James*. Here we decline to hold the Judge in error in following *James* rather than *Apollo*. In a situation such as this where the trial court has failed to comply with *Apollo*, yet where there has been no objection to such a failing, this Court has the duty to scrutinize the entire record to determine whether substantial rights of the Appellant were affected. *See United States v. Rixner*, 548 F.2d 1224, 1227 (5th Cir. 1977), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977); *United States v. Jennings*, 527 F.2d 862, 867–68 (5th Cir. 1976). *Cf. United States v. Martinez*, 481 F.2d 214, 221 (5th Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974).

A situation somewhat analogous to the present circumstances can be found in those cases in which a defendant was convicted on both conspiracy and substantive counts, yet this Court on review concludes that the admission of the conspiracy count had been erroneous. In such cases, this Court has held that the conviction on the substantive counts should stand or fall upon a finding of whether it was fatally infected by the conspiracy evidence.[5] *See United States v. Marshall*, 513 F.2d 274, 276 (5th Cir. 1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 773, 46 L.Ed.2d 636 (1976); *United States v. Tyler*, 505 F.2d 1329, 1333 (5th Cir. 1975).

In the present case, the amount of hearsay statements was minimal. Excluding any evidence involving the conspiracy count, the evidence against Alanis on the substantive count was exceedingly strong. Agent Valadez clearly and specifically linked the Appellant with the sale of the stolen Cordoba. The Appellant was definitely under the impression that it was to be sold by Valadez in Mexico. In light of the abundant evidence against Alanis on the substantive count, this Court is convinced that the introduction of the hearsay statements did not fatally infect the substantive count nor were the rights of the Appellant substantially affected. Additionally, any errors that might have arisen out of the trial court's use of the incorrect standard for introduction of such hearsay statements or its failure to caution the jury were harmless.

AFFIRMED.

---

**5.** Oftentimes this court has simply refused to consider a challenge to the introduction of co-conspirator hearsay statements when the defendant has also been convicted on the substantive counts and received concurrent sentences. *See, e. g., United States v. Tasto*, 586 F.2d 1068, 1070 (5th Cir. 1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 484 (1979); *United States v. Juarez*, 566 F.2d 511,

516 (5th Cir. 1978). Nonetheless, it is clear from the *Marshall* and *Tyler* cases cited in the opinion that the concurrent sentence doctrine is inapplicable when the conspiracy evidence fatally infects the conviction under the substantive counts. Although the concurrent sentence doctrine has no relevance in this case, the test of "fatal infection" is instructive.