The STATE of Utah, Plaintiff and Respondent,

v.

Patricia J. GRAY, Defendant and Appellant.

No. 20368.

Supreme Court of Utah.

April 10, 1986.

Ronald J. Yengich, Bradley P. Rich, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

A jury convicted defendant Patricia J. Gray of two counts of agreeing, consenting, offering, or arranging to distribute cocaine in violation of U.C.A., 1953, § 58–37–8(1)(a)(iv),[1] a second degree felony.

## I

On the evening of January 4, 1984, Kristine Imani, an undercover agent with the Salt Lake City Police Department, Narcotics Division, went to the residence of Ellen Dickerson to purchase cocaine. Imani had purchased one-half gram of cocaine from Dickerson for $90 on three previous occasions in December of 1983. In the past, Dickerson had produced the cocaine from a cosmetics bag in her house. This time, however, Dickerson said that she no longer kept cocaine in her house and told Imani to return later.

Imani returned forty-five minutes later. Soon thereafter, Patricia Gray arrived and was introduced to Imani. Gray told Imani that the cocaine was of a very good quality. Imani gave Dickerson $90, which Dickerson then put in her purse. Gray and Dickerson then left in Gray's car, a red Toyota, with Gray driving, while Imani remained behind.

Gray's car was followed to a residence on Desert Dust Drive and then back to Dickerson's house. Upon their return, Gray said, "We got it." The three then discussed their plans to "free-base" the cocaine. Gray poured the cocaine onto a mirror on the kitchen table and divided it in half. She asked Imani if she had divided it fairly. Imani responded "yes," and Gray placed one-half of the cocaine in a bindle and handed it to Imani.

On January 10, 1985, Imani called Dickerson and arranged to go to her house at 5:45 p.m. to buy more cocaine. When Imani arrived, Gray was already there. Imani told them she wanted to buy another half gram and gave Dickerson $90. Gray and Dickerson again left in Gray's car, were again followed to the same residence on Desert Dust Drive, and were observed going into the residence. When they returned to Dickerson's residence, Gray told Imani, "They were just about to leave. We got there just in time." Defendant again divided the cocaine, placed one-half of it in a bindle, and gave it to Imani. The substances received by Imani on both January 4 and January 10 were subsequently determined to be cocaine.

At trial, the State elicited testimony from Imani that she had purchased drugs at Dickerson's residence on three occasions prior to those for which defendant was charged. She also testified as to what transpired during these transactions without showing that defendant was present. The testimony was admitted over counsel's objection.

Imani was then allowed to testify as to the negotiations with Dickerson concerning the January 4 transaction, again without showing that defendant was present and again over objection by counsel. Moreover, Imani interjected that Dickerson said that she was "not dealing it out of her house any more—"

Imani testified that after defendant's arrival on the 4th of January, Dickerson stated, "We're going to go out and get the dope." Again counsel objected. Imani also testified over objection that on the 10th of January Dickerson said, "Because the one who purchases it with her, Patricia, had to get it done fast, and they had to go to a friend's house. So they had to leave immediately." Imani testified that after

---

1. In 1984, the Code provided in pertinent part: "Except as authorized by this act, it shall be unlawful for any person knowingly and intentionally ... to agree, consent, offer or arrange to distribute or dispense a controlled substance for value...." U.C.A., 1953, § 58–37–8(1)(a)(iv) (Supp.1983). Cocaine is defined as a schedule II controlled substance. U.C.A., 1953, § 58–37–4(2)(b)(i)(D) (Supp.1985).

Dickerson and Gray returned, Dickerson said, "We got it. It wasn't easy." Dickerson was not called to testify at trial. Defendant was subsequently found guilty.

## II

 Defendant claims that the trial judge erred by allowing the State to introduce Dickerson's statements. This Court will not disturb the ruling of the trial court on questions of admissibility of evidence unless it clearly appears that the lower court was in error.[2] Accordingly, this Court may affirm the trial court's decision to admit evidence on any proper grounds, even though the trial court assigned another reason for its ruling.[3] Further, before this Court will rule on claims of evidentiary error, the record must reflect a timely objection, stating the specific ground upon which it is based.[4]

Defendant claims that the trial court erred by allowing Imani to testify that she had purchased cocaine on three occasions in December of 1983 and as to the details of these transactions. Defendant appears to contend that introduction of this evidence violated the hearsay rule. However, except as to one instance which we find insignificant, counsel failed to base his objection to this testimony on the hearsay rule; counsel's objections were grounded on lack of foundation, relevance, and materiality.

 Even if we consider defendant's contention pursuant to the plain error rule,[5] we find the claim without merit. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.[6] Testimony containing hearsay is generally not admissible at trial.[7] However, courts have carved out several exceptions to this exclusionary rule in cases where there is a substantial need for the evidence if there are circumstantial guarantees of trustworthiness.[8] Imani's testimony that she had purchased drugs at Dickerson's residence on three occasions prior to those charged in the information and the circumstances surrounding these transactions was clearly a recounting of what Imani herself had observed and not what she had heard. Since this testimony was not of an out-of-court nature, it was properly admitted, provided that the testimony was in fact relevant.[9]

 Evidence that is not relevant is not admissible at trial.[10] Rule 401 of the Utah Rules of Evidence provides that for evidence to be relevant, it must have a tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. At trial, the prosecutor claimed that the evidence was offered by the State "to develop a pattern of vehicles being at the premises and that sort of thing." Although the trial judge stated that the testimony was not being offered in any respect as to the charge in this case, it is clear that the testimony concerning previous drug transactions with Dickerson was relevant in this action. The transcript plainly reveals that the prosecution was trying to establish defendant's involvement in the January transactions by showing variations between the December drug buys and those made in January. Evidence showing the change in defendant's involvement in the December and January transactions is clearly circumstantial evidence of defendant's knowing and intentional involvement in arranging to distribute a controlled substance for value. Since the testimony made the evidence of these facts more probable than would have

---

2. *State v. Cole,* Utah, 674 P.2d 119, 122 (1983).

3. *State v. Gallegos,* Utah, 712 P.2d 207, 209 (1985).

4. Utah R.Evid. 103(a)(1).

5. Utah R.Evid. 103(d).

6. Utah R.Evid. 801(c).

7. Utah R.Evid. 802.

8. *See* 29 Am.Jur.2d *Evidence* § 496 (1967). *See also* Utah R.Evid. 803(24), 804(b)(5).

9. *See* Utah R.Evid. 801(c).

10. Utah R.Evid. 402.

been the case had the testimony been excluded, Imani's testimony concerning the December drug buys was properly admitted over defendant's objections as to its materiality.

Defendant next argues that testimony of what transpired at Dickerson's residence on the evening of January 4, 1984, before defendant arrived, was hearsay and improperly admitted. The trial judge allowed Imani to testify that on January 4, 1984, she went to Dickerson's house and asked to purchase cocaine. When read in context with the judge's comment "that it was not taken against defendant," it is obvious that this testimony was purely foundational. Imani's testimony that Dickerson stated that she was "not dealing out of her house any more" was unresponsive, was immediately terminated by the trial judge, and was not objected to by counsel.

After establishing that Gray had arrived at Dickerson's residence on January 4 and that Imani had given Dickerson $90, the prosecutor asked Imani, "What did you observe Dickerson do with the money?" Imani responded, "She put it in her purse and said, 'We're going to go out and get the dope.'" This hearsay statement was obviously unresponsive to the prosecutor's inquiry. However, in view of our discussion below, agent Imani could have freely testified as to Dickerson's statements.

Defendant claims that Imani's testimony that Dickerson said she "would have to go right away because the one who purchases it with her, Patricia, had to get it done fast and they had to go to a friend's house. So they had to leave immediately" was erroneously admitted over her hearsay objection. Imani also testified over a similar objection that when Dickerson and defendant returned, Dickerson said, "We got it. It wasn't easy."

■ As discussed above, although hearsay as a general proposition is not admissible, there are several exceptions to this rule. Utah Rule of Evidence 63(9)(b), adopted by this Court in 1971, provided an exception to the hearsay rule for statements made while a party and the declarant were participating in a plan to commit a crime or a civil wrong if the statement was relevant to the plan or the subject matter and made while the plan was in existence and before its completion or other execution.[11] In 1983, this Court adopted, in substantial part, the federal rules of evidence.[12] The preliminary committee note to the Utah rules states that the rules are to provide a fresh starting place for the law of evidence. Since the advisory committee generally sought to achieve uniformity between Utah's rules and the federal rules, this Court looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules.[13]

■ The substance of old Rule 63(9)(b) is now found in Utah Rule of Evidence 801(d)(2)(E).[14] However, instead of being an exception to the hearsay rule, the new rule defines such statements as being nonhearsay. Moreover, the new rule is much narrower than was the old rule.[15]

Since the new Utah rule is the federal rule verbatim, and in light of the construction objectives noted above, we turn to the federal decisions interpreting the federal rule to aid in defining the contours of Utah Rule of Evidence 801(d)(2)(E).

■ For an out-of-court statement to be considered nonhearsay within the purview of Rule 801(d)(2)(E), it

(1) must be offered against a party-opponent;

---

11. Utah R.Evid. 63(9)(b) (superseded September 1, 1983).

12. See Preliminary Note of Committee, Utah R.Evid. (Supp.1985).

13. See id. See also Utah R.Evid. 102 (purpose and construction of the rules).

14. The rule provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

15. Committee Note to Rule 801, Utah R.Evid. (Supp.1985).

(2) must have been made by a co-conspirator of the party;

(3) must have been made during the course of the conspiracy; and

(4) must have been made in furtherance of the conspiracy.

A charge of conspiracy in the information or indictment is not required for a statement to be admitted pursuant to the rule.[16] "In such cases, the courts sometimes drop the language of conspiracy altogether, calling the exception a 'joint venture' exception or a 'concert of action' exception."[17] The rationale for such a rule is well stated in *United States v. Trowery:*

> The distinction should be noted between "conspiracy" as a crime and the co-conspirator exception to the hearsay rule. Conspiracy as a crime comprehends more than mere joint enterprise. It also includes other elements, such as a meeting of the minds, criminal intent and, where required by statute, an overt act. When these elements are established, the crime of conspiracy is proved.
>
> The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law. It may be applied in both civil and criminal cases. Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.[18]

Consequently, although proof of criminal conspiracy may be sufficient to support introduction of testimony pursuant to the exception, it is not necessary for application of Rule 801(d)(2)(E).[19] It follows that "the quantum and nature of evidence required for the application of the co-conspirator exception differ from that required for conviction of the crime of conspiracy...."[20] The difference in what must be proved in order to convict a person of conspiracy, as well as the difference in the burden of proof, turns on the different policies underlying the two rules: the co-conspirator exception to the hearsay rule is grounded upon extreme necessity and assurances of accuracy traditionally associated with statements against interest and the community of interest among co-conspirators.[21]

■ To utilize the exception, the State must introduce evidence independent and exclusive of the conspirator's hearsay statements themselves, showing the existence of a criminal joint venture and the defendant's participation therein.[22] Independent evidence of the declarant's membership in the criminal venture is also required.[23] "Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence."[24]

Defendant contends that in *State v. Albo*[25] this Court held that the independent

---

**16.** This is the prevailing view in the federal circuits. *See, e.g., United States v. Kendall,* 665 F.2d 126, 131 (7th Cir.1981) (and cases cited therein), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). *See also* 32B Am. Jur.2d *Federal Rules of Evidence* § 219 (1982 & Supp.1985); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 801(d)(2)(E)[01], at 801–229 & n. 4 (1985); Annot., 44 A.L.R.Fed. 627, 633 (1979 & Supp.1985).

**17.** *United States v. Gil,* 604 F.2d 546, 549 (7th Cir.1979) (citations omitted).

**18.** 542 F.2d 623, 626 (3d Cir.1976) (citations omitted), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977).

**19.** *See Gil,* 604 F.2d at 549.

**20.** *Trowery,* 542 F.2d at 627.

**21.** *See Gil,* 604 F.2d at 549.

**22.** *See, e.g., United States v. Nixon,* 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104 n. 14, 41 L.Ed.2d 1039 (1974); *United States v. Singer,* 732 F.2d 631, 636 (8th Cir.1984); *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir.1978). *See also State v. Albo,* Utah, 584 P.2d 906, 908 (1978); Annot., 44 A.L.R.Fed. 627, 636 (1979).

**23.** *United States v. Cambindo Valencia,* 609 F.2d 603, 630–31 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).

**24.** *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

**25.** Utah, 584 P.2d 906 (1978).

evidence upon which use of the exception is to be predicated must establish conspiratorial involvement beyond a reasonable doubt. However, defendant seriously misconstrues the significance of *Albo*, particularly in light of our recent adoption of the new Utah Rules of Evidence. In *Albo*, the co-conspirator's statements were admitted pursuant to Rule 63(9)(b). Under the old scheme, such statements were still hearsay but admissible pursuant to an exception. Moreover, the jury played a prominent role. Thus, under the old rules, if the judge found independent evidence of the conspiracy sufficient to sustain a finding of a prima facie case, he would allow the statements to be admitted as against the defendant. The judge then instructed the jury that the co-conspirator's statement could be used against the defendant if the conspiracy and the defendant's involvement therein were established by independent nonhearsay evidence beyond a reasonable doubt. However, the judge only needed independent evidence sufficient to sustain a finding of a prima facie case to properly admit the evidence against a defendant.

■■■ The new rules change the way the co-conspirator's exception is applied: they give the court the entire responsibility of deciding whether the co-conspirator's exception should be applied and evidence admitted pursuant thereto.[26] Accordingly, the old approach, which allowed the judge to refuse to admit a co-conspirator's hearsay statements only if there was no evidence sufficient to sustain a prima facie

case of a conspiracy, has no place under the new rules.[27] We acknowledge the divergent authority on the subject and hold today, in accordance with the prevailing view, that the criminal venture and the defendant's participation therein must be established by a preponderance of the evidence.[28] When applying the standard to determine whether to admit a co-conspirator's hearsay statements, the court may consider the accused's own statements indicating his involvement in the conspiracy,[29] as well as actions by the accused or the declarant.[30] Further, although a conspirator's statement may be provisionally admitted, subject to eventual independent proof of the criminal venture and the defendant's participation therein,[31] the court should hereafter always make an on-the-record finding of admissibility before the case is submitted to the jury.[32]

■■■ Applying these principles, we find that defendant and Dickerson were involved in a criminal venture. When Imani bought drugs in December of 1983, the transactions occurred without defendant's involvement and without Dickerson's having to leave her residence. On January 4, when agent Imani returned to Dickerson's residence to buy cocaine, Dickerson did not complete the transaction, but instead waited for defendant to arrive. When Imani asked defendant about the quality of the cocaine, defendant replied that it was "very good." Moreover, Gray discussed her plans to "free-base" the cocaine. Defend-

---

**26.** *See* Utah R.Evid. 104(a).

**27.** *See Andrews,* 585 F.2d at 966.

**28.** *See, e.g., Singer,* 732 F.2d at 636; *United States v. Kelly,* 718 F.2d 661, 663 (4th Cir.1983); *United States v. Vinson,* 606 F.2d 149, 153 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 319 (1980); *United States v. Stanchich,* 550 F.2d 1294, 1298 (2d Cir.1977); *Trowery,* 542 F.2d at 627.

**29.** Utah R.Evid. 801(d)(2)(A).

**30.** *See, e.g., United States v. Durland,* 575 F.2d 1306, 1308–10 (10th Cir.1978); *United States v.*

*Swainson,* 548 F.2d 657, 662 (6th Cir.), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).

**31.** *See, e.g., Cambindo Valencia,* 609 F.2d at 630. If, however, the prosecution fails to offer sufficient independent evidence, the co-conspirator's hearsay statements may be stricken from the record. *See, e.g., United States v. Weiner,* 578 F.2d 757, 768 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). The jury may need to be given a limiting instruction, *see, e.g., United States v. James,* 590 F.2d 575, 583 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), and a mistrial may even be warranted. *See, e.g., id.*

**32.** *See Vinson,* 606 F.2d at 153.

ant then drove her car with Dickerson to Desert Dust Drive and then returned to Dickerson's residence. Defendant stated, "We got it" and proceeded to divide the cocaine in half and hand it to Imani. On the 10th of January, defendant was present when the undercover agent arrived to purchase the cocaine. Defendant again drove her car with Dickerson to the residence on Desert Dust Drive and upon return again divided the cocaine and handed it to Imani. Finally, there was evidence that prior to Imani's going to Dickerson's house she was searched for drugs. This evidence, when viewed objectively, makes it more probable than not that defendant and Dickerson were involved in a criminal venture for purposes of 801(d)(2)(E).

The cases upon which defendant relies are easily distinguished. In *United States v. Tyler*,[33] there was no evidence of what transpired inside Tyler's apartment.[34] Here Imani testified to exactly what took place inside the Dickerson residence. In *United States v. Stroupe*,[35] again the agents did not have evidence of what was going on in Stroupe's house, and the informant was not searched prior to making the buy. Moreover, the agents did not hear Stroupe say anything about drugs or see him deliver any drugs.[36] The facts in *People v. Vega*[37] are similarly distinguishable.

■ Once a criminal venture is established, it cannot seriously be contended that the statements were not made during the course of the criminal venture. Moreover, we find that the statements were made in furtherance of the "conspiracy." These statements include Dickerson's statement that "we're going to go out and get the dope" and her statement that she and Gray had to leave quickly to get the drugs. It is obvious that by these statements Dick-

erson intended Imani to believe that the cocaine would soon be delivered. Dickerson's statement that getting the cocaine "wasn't easy" would have reinforced to Imani that Dickerson and defendant would go the extra mile to please a customer. Therefore, we hold that the trial court properly allowed agent Imani to testify as to Dickerson's statements concerning the criminal venture.

### III

Defendant claims that the evidence introduced at trial was insufficient as a matter of law to establish the crime of arranging to distribute a controlled substance for value.[38] When reviewing claims that the evidence is insufficient to support a verdict of guilty, this Court has stated:

> We do not invade that prerogative and overturn the jury's verdict unless the admissible evidence produced at trial is so lacking and unsubstantial that reasonable minds must necessarily entertain a reasonable doubt of defendant's guilt. In considering an issue raised with respect to insufficiency of the evidence, this Court views all of the evidence presented at trial in the light most favorable to the jury's verdict.[39]

■ We find that the admissible evidence produced at trial clearly supported defendant's conviction under the statute. This Court has addressed section 58–37–8(1)(a)(iv) on several previous occasions. Perhaps the most instructive case is *State v. Harrison*.[40] In that case, we upheld the statute against a claim that it was unconstitutionally vague. We stated that any witting or intentional lending of aid in the distribution of drugs, in whatever form the aid takes, is proscribed by the act.[41] In

**33.** 505 F.2d 1329 (5th Cir.1975).

**34.** *Id.* at 1332.

**35.** 538 F.2d 1063 (4th Cir.1976).

**36.** *Id.* at 1065.

**37.** 413 Mich. 773, 321 N.W.2d 675 (1982).

**38.** U.C.A., 1953, § 58–37–8(1)(a)(iv).

**39.** *State v. McCullar,* Utah, 674 P.2d 117, 118 (1983) (footnotes omitted).

**40.** Utah, 601 P.2d 922 (1979).

**41.** *Id.* at 923.

other words, *any act* in furtherance of "arrang[ing] to distribute ... a ... controlled substance" constitutes a criminal offense pursuant to the statute.[42] We also pointed out that it is not necessary for the defendant to receive any value in exchange for drugs to be convicted under the statute.[43]

 When Imani first began purchasing cocaine from Dickerson in December, Dickerson was dealing out of her own home and defendant was not involved in the transactions. When Dickerson stated that she was no longer dealing out of her home, defendant was thereafter involved in the transactions. Moreover on January 4th and 10th, defendant was present when Imani was at Dickerson's to purchase the cocaine. During both transactions, defendant drove Dickerson to Desert Dust Drive, where, on at least one occasion, both defendant and Dickerson entered the residence. When defendant and Dickerson returned, it was defendant who divided the cocaine and gave it to Imani. Defendant was also puffing the drug's quality. From this evidence, it was reasonable for the jury to conclude that both defendant and Dickerson obtained the cocaine at the residence on Desert Dust Drive and that defendant was directly involved in the scheme. Moreover, statements made by Gray and those made by Dickerson that were properly admitted as discussed above always referred to "we," as opposed to merely Dickerson. Finally, Gray's comments concerning the quality of the cocaine furthered the distribution for value of a controlled substance.

The conviction and judgment of the trial court are affirmed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

**42.** *Id.* at 923–24.

**43.** *Id.* at 924.