**STATE of Utah, Plaintiff and Appellee,**

v.

**Nena R. CHAVEZ, Defendant and Appellant.**

**No. 910723–CA.**

Court of Appeals of Utah.

Oct. 22, 1992.

Ronald S. Fujino and L. Clark Donaldson, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Presiding Judge:

Defendant appeals her conviction for unlawfully distributing a controlled substance, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1990). Defendant also appeals the trial court's restitution order. We affirm.

## FACTS

On June 20, 1990, Patricia Jones called Edward Lucas, an undercover Murray City Police Officer, to inform him that she could obtain for him a quarter ounce of cocaine for $360. Patricia informed officer Lucas that in order to obtain this cocaine he would have to discuss the details with her daughter, Niciey. At 8:30 p.m., officer Lucas arrived at the Jones residence. Niciey told officer Lucas that the cocaine was at

another location and asked him to drive her there.

At approximately 9:15 p.m., officer Lucas and Niciey arrived in front of defendant's apartment. Officer Lucas parked his car between ten and twenty feet from the door of defendant's apartment. He then handed Niciey $360 and watched as she approached and knocked on defendant's door. Defendant answered the door and Niciey entered her apartment. After a few minutes, defendant and Niciey exited defendant's apartment and knocked on the door of an adjacent apartment. When they did not receive an answer, defendant and Niciey spoke for a minute and then Niciey returned to officer Lucas's car.

Niciey told officer Lucas that her usual supplier was not available and advised him of some changes in the transaction. Officer Lucas testified that

> [Niciey] informed me that there had been some changes and if I approved, we would go ahead with the transaction. The changes were, No. 1, her main supplier was not available. So we would be dealing with [defendant]. Second of all, the price was different. [Defendant's] prices were higher than the first girl.... It would be $40 more than originally agreed, which would make $400 for the narcotics. And the third one was, I was told by Niciey that some of the supply was kept in apartment No. 9, the neighbor's apartment. So if there were problems with law enforcement, the narcotics wouldn't be located in No. 10. Being that these individuals weren't at home and the narcotics weren't available in 10, a third location had to be accessed to gain access to the narcotics. So we were to front the money to [defendant], go back to Ms. Jones' residence and wait for the narcotics to be delivered.

Officer Lucas agreed to the changes, paid Niciey an additional $40 which she gave to defendant, and drove Niciey back to her residence to await delivery. At approximately 9:45 p.m., defendant arrived in front of the Jones residence driving a car that officer Lucas had earlier observed in front of defendant's apartment. Niciey ran out to the car and returned a few minutes later with the cocaine which she immediately gave to officer Lucas. Officer Lucas testified that after Niciey returned to the house with the cocaine she identified defendant for the first time by name.

Niciey and Patricia demanded a portion of the drug as payment for their participation in the drug transaction. Accordingly, after defendant delivered the cocaine, and after Niciey had made her statements about the defendant, officer Lucas divided up the cocaine and distributed some of it to Niciey and Patricia.

Defendant was arrested and charged with unlawfully distributing a controlled substance. The case was tried to a jury. Following the presentation of all the evidence, the jury returned a verdict of guilty. The court sentenced defendant to a term of one to fifteen years in prison, but stayed the sentence pending satisfactory completion of eighteen months probation. The court also ordered defendant to pay Metro Narcotics $400 in restitution.

## ISSUES

Defendant argues on appeal that (1) the trial court erred in admitting certain hearsay statements; (2) the trial court erroneously refused to give defendant's preferred reasonable doubt instruction; and (3) the trial court improperly ordered defendant to pay $400 in restitution to Metro Narcotics.

## HEARSAY STATEMENTS

Defendant claims that the trial court erred in admitting certain statements under rule 801(d)(2)(E) of the Utah Rules of Evidence. This rule provides that "a statement by a coconspirator of a party [made] during the course and in furtherance of the conspiracy" is not hearsay and is therefore admissible.

### A. Existence of Conspiracy

Defendant argues that the State did not adequately prove the existence of a criminal joint venture, and her participation therein, in order to utilize rule 801(d)(2)(E). Before the State can utilize this rule it

"must introduce evidence independent and exclusive of the conspirator's hearsay statements themselves, showing the existence of a criminal joint venture and the defendant's participation therein. Independent evidence of the declarant's membership in the criminal venture is also required." *State v. Gray*, 717 P.2d 1313, 1318 (Utah 1986) (footnotes omitted).

The trial court made specific findings of fact regarding the existence of a joint criminal venture and defendant's participation therein:

> I specifically find that there was evidence independent and exclusive of statements of these individuals. That there was a joint criminal venture. That defendant participated in the joint criminal venture and that there was membership by the declarant in the criminal venture.

We review a trial court's findings of fact under a clearly erroneous standard and will not upset them unless they are "against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made...." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *see also* Utah R.Civ.P. 52(a). In order to challenge findings of fact, "the appellant must marshal all the evidence in support of the trial court's findings of fact and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack." *State v. Moosman*, 794 P.2d 474, 475–76 (Utah 1990) (footnote omitted).

The defendant has failed to marshal the evidence in support of these findings. We therefore do not disturb them, and accept as fact the existence of a joint criminal venture and the defendant's participation therein.

### B. Patricia's and Niciey's Statements Setting up the Deal

■ Defendant next argues that any statements made by Patricia and Niciey Jones to officer Lucas initiating the drug buy were not admissible because they were made before defendant entered the conspiracy. At issue is officer Lucas's testimony that "Ms. [Patricia] Jones informed me that she would be able to acquire some quality cocaine for me at a price of approximately $360 per quarter ounce. However, the details would have to be discussed with her daughter Niciey." Officer Lucas further testified that Niciey told him that Derinda Mason, defendant's mother, was her regular supplier.

A defendant does not have to be a member of the conspiracy at the time that a contested statement is made in order for the statement to be admitted.

> Once found to be a member of a conspiracy, a defendant is subject to proof of the prior acts and comments of his coconspirators. A statement made by a coconspirator, if in furtherance of the conspiracy, is therefore admissible against the defendant even if made prior to the defendant's involvement in the conspiracy.

*United States v. Masse*, 816 F.2d 805, 811 (1st Cir.1987).[1] Defendant joined the conspiracy when she attempted to help Niciey locate her regular supplier and then agreed to supply the cocaine when Niciey's regular supplier could not be found. With her entry into the conspiracy, the statements of her co-conspirators prior to her involvement became admissible against her. Therefore, defendant's legal argument as to these statements is without merit.

### C. Niciey's Statements Outside Defendant's Apartment

Defendant argues that statements made by Niciey to officer Lucas after returning from defendant's apartment to his car, regarding changes in the transaction, were inadmissible because the State failed to prove the existence of a conspiracy and defendant's participation therein. As already indicated, the trial court specifically found the existence of a conspiracy and defendant's participation therein, and defendant failed to marshal the evidence in support of these findings. We therefore do

---

1. Since Utah's rule is identical to the federal rule, our supreme court has relied on federal cases interpreting the federal rule as persuasive authority. *Gray*, 717 P.2d at 1317.

not disturb the trial court's decision to admit these statements.

### D. Niciey's Statements After Delivery of the Cocaine

Defendant argues that the statements made by Niciey to officer Lucas after defendant delivered the cocaine were inadmissible because they were made after the conspiracy had ended, and therefore could not have been in furtherance of the conspiracy. At issue is officer Lucas's testimony that "[w]hen Niciey came back into the living area of her home, she said, 'That girl is crazy. Nena is crazy.... The girl is crazy because she has three or four ounces sitting in her lap besides what she gave me....' " [2]

■ We first address the question of whether these statements were made during the conspiracy. The criminal venture in this case was not complete until the co-conspirators were paid for their activities. That is, the conspiracy was not complete until officer Lucas divided some cocaine between Patricia and Niciey. It is well settled that a "conspiracy does not end, of necessity, before the spoils are divided among the miscreants." *United States v. Knuckles*, 581 F.2d 305, 313 (2nd Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). In this case, where Patricia and Niciey insisted on a share of the cocaine for their participation in the conspiracy, the conspiracy was not complete until officer Lucas distributed their share of the cocaine. Since the statements at issue were made before the distribution, it is clear that they were made during the course of the conspiracy.

■ It is debatable, however, whether the statements furthered the conspiracy. Nevertheless, even if we assume the statement did not further the conspiracy, we may not reverse defendant's conviction. Before we will upset a verdict based on the allegedly erroneous admission of evidence,

the defendant must demonstrate that the evidence is so prejudicial that "there is a reasonable likelihood of a more favorable result for the defendant in its absence." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989); *see also State v. Gardunio*, 652 P.2d 1342, 1344 (Utah 1982) (verdict will be reversed due to erroneous admission of evidence only if it "probably had a substantial influence in bringing about the verdict") (quoting former Utah R.Evid. 4); Utah R.Evid. 103(a) (error must affect substantial right of appellant); Utah R.Crim.P. 30(a) (same). We are not persuaded that there was a reasonable likelihood of a more favorable outcome even if the statements made by Niciey to officer Lucas following delivery of the cocaine had been excluded.

The State presented substantial evidence of defendant's involvement in the crime. Officer Lucas testified that on June 20, 1990, he received a phone call from Patricia informing him that she could obtain cocaine for him. That evening, he went to Niciey's house in order to obtain the cocaine. Niciey informed officer Lucas that the drugs were at another location. He then drove Niciey to defendant's apartment building and waited in his car while Niciey approached and knocked on defendant's door. Officer Lucas observed defendant answer the door and recognized defendant from having seen her on approximately ten previous occasions around the apartment complex. He then observed defendant and Niciey go inside defendant's apartment. A few minutes later officer Lucas watched as defendant and Niciey exited defendant's apartment and knocked on the door of the adjacent apartment. When defendant and Niciey did not receive an answer they engaged in a short conversation after which Niciey returned to the car. Niciey informed officer Lucas of some changes including defendant's participation in the conspiracy and a $40 increase in the price of the cocaine. Officer Lucas agreed to the changes and gave Niciey the additional $40

---

**2.** Defendant argues that these statements identified her for the first time by name. Defendant claims that since officer Lucas did not know her name until Niciey made these statements they were highly prejudicial and should not have

been admitted. This argument is without merit. Officer Lucas did not need to know defendant's name in order to make a positive identification of defendant as a participant in the conspiracy.

and watched as Niciey returned to defendant's apartment. He then drove Niciey back to her house to await delivery of the drugs. Shortly after arriving back at Niciey's house, officer Lucas observed a car arrive and recognized defendant as the driver of the car. Officer Lucas watched as Niciey ran out to the car and returned with a substance later determined to be cocaine.

This evidence was clearly sufficient to convict the defendant in the absence of Niciey's final statements after delivery of the cocaine. We are, therefore, not persuaded that in light of all the evidence, including the properly admitted statements, there was a substantial likelihood of a different outcome had the statements in question been excluded. We therefore do not disturb the conviction.

## REASONABLE DOUBT INSTRUCTION

We have reviewed defendant's arguments with regard to the trial court's refusal to use her suggested reasonable doubt instruction and find them to be without merit. The instruction given by the trial court was the same instruction that we have upheld on several occasions as being an accurate statement of the law. *See State v. Pedersen*, 802 P.2d 1328, 1331–32 (Utah App.1990).

## RESTITUTION

Defendant argues that the trial court erred in ordering her to pay $400 in restitution to Metro Narcotics because Metro Narcotics was not a "victim" of the crime as intended by Utah Code Ann. § 76–3–201(3)(a)(i) (1990). However, defendant failed to raise this issue in the trial court.

We are governed by the general principle that matters not placed in issue in the trial court cannot be considered for the first time on appeal. *State v. Webb*, 790 P.2d 65, 77–78 (Utah App.1990). We therefore do not address the defendant's challenge to the restitution order for the first time on appeal.

## CONCLUSION

Defendant has failed to properly challenge the trial court's finding of the existence of a conspiracy and defendant's participation therein. The statements made prior to defendant's participation in the conspiracy were properly admitted against defendant. The statements made by Niciey indicating a change in the conspiracy were likewise properly admitted against defendant. Defendant has failed to carry her burden of demonstrating that the admission of Niciey's statements after defendant delivered the cocaine prejudiced the outcome of her case. Defendant's arguments concerning the reasonable doubt instruction are without merit. Finally, we do not reach the merits of defendant's restitution arguments because she raised them for the first time on appeal.

We therefore affirm the defendant's conviction and sentence.

GREENWOOD, J., concurs.

BILLINGS, J., concurs in the result.