**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brent Paul SWANSON, Defendant–
Appellant.**

No. 90–10085.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1991.

Decided Aug. 27, 1991.

Dennis Jones, Phoenix, Ariz., for appellant.

Janet L. Patterson and Darcy A. Cerow, Asst. U.S. Attys., Washington, D.C., for appellee.

Before HUG, ALARCON and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Brent Paul Swanson appeals from his conviction and sentence for bank robbery. We must decide whether a court appointed defense counsel's concession, during closing argument, that no reasonable doubt exists regarding the only factual issues in dispute, constitutes a deprivation of the right to due process and the effective assistance of counsel that is prejudicial per se. We conclude that we must reverse because counsel's abandonment of his client's defense caused a breakdown in our adversarial system of justice.

### PERTINENT FACTS

On February 22, 1989, Swanson was indicted on one count of bank robbery, pursuant to 18 U.S.C. § 2113(a). Swanson initially pleaded guilty on April 17, 1989. Swanson made a motion to withdraw his plea of guilty after reading the recommendation in the presentence report that he should be sentenced as a career offender. The motion was granted and the court selected a date for a trial by jury.

The jury trial commenced on July 25, 1989. Swanson was represented at trial by David Ochoa, who was appointed by the trial court under the Criminal Justice Act. 18 U.S.C. § 3006A(b). Mr. Ochoa rested after the close of the Government's case in chief, without calling any defense witnesses.

Before counsel presented their arguments, the trial court gave the jury instructions to assist it in considering the evidence in the case. The jury was admonished that "[t]he Government has the burden of proving every element of a charge beyond a reasonable doubt. If it fails to do so, you must return a not guilty verdict as to the charge." The Government concluded its opening argument by stating, "[b]ased on all [the] evidence, the Government has proven to you beyond any reasonable doubt that Mr. Swanson robbed Citibank on January 20th, 1989."

Mr. Ochoa began his argument by stating that it is a defense attorney's "job" to make the Government prove its case beyond a reasonable doubt. Mr. Ochoa told the jurors that in this country a person has a right to stand by his plea of not guilty. Mr. Ochoa then stated that the evidence against Swanson was overwhelming and that he was not going to insult the jurors' intelligence.

Prior to discussing the inconsistencies in the testimony of the Government's identification witnesses, Mr. Ochoa stated, "[a]gain in this case, I don't think it really overall comes to the level of raising reasonable doubt." After pointing out that the witnesses had varied in their recollection of the length of time the perpetrator was in the bank, Mr. Ochoa told the jury, "the only reason I point this out, not because I am trying to raise reasonable doubt now, because again I don't want to insult your intelligence...." He concluded his argument by telling the jurors that if they found Swanson guilty they should not "ever look back" and agonize regarding whether they had done the right thing.[1]

---

1. The full text of Mr. Ochoa's closing argument is attached as an appendix to this opinion.

## DISCUSSION

Swanson contends that he was denied his right to the effective assistance of counsel because his court appointed attorney conceded in his argument to the jury that there was no reasonable doubt regarding the only factual issues in dispute. "Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo." *Smith v. Ylst,* 826 F.2d 872, 875 (9th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The Supreme Court has instructed that "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

Although ineffective assistance of counsel claims are frequently presented in collateral attacks on judgments in criminal matters, we are not prevented from considering such contentions on direct appeal where "the record is sufficiently complete to allow us to decide the issue." *United States v. O'Neal,* 910 F.2d 663, 668 (9th Cir.1990). Where the record on appeal is not adequate to determine whether there has been a deprivation of the sixth amendment's protection, "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). In a habeas corpus proceeding, the petitioner may present facts that are not reflected in a record of the proceedings of a trial on the issue of guilt. *United States v. Sanclemente–Bejarano,* 861 F.2d 206, 211 (9th Cir.1988); *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir.1978). In pursuing his claim of ineffectiveness of counsel, Swanson relies solely on the reported statements made by Mr. Ochoa during final argument. Accordingly, the record is sufficient for a review of the merits of Swanson's constitutional claim on this direct appeal. Under these circumstances, we are required to resolve the effectiveness of counsel claim now. There is no reason to delay resolution of this issue in this matter for the presentation of facts outside the trial record.

The Government argues that Swanson's ineffective assistance of counsel claim must fail because there is no showing that Mr. Ochoa's closing argument was prejudicial under the test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court held that a defendant is required to show (1) deficient performance by counsel, and (2) prejudice to the defense. *Id.* at 687, 104 S.Ct. at 2064. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided on the same date as *Strickland,* "the Supreme Court created an exception to the *Strickland* standard for ineffective assistance of counsel and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed." *Stano v. Dugger,* 921 F.2d 1125, 1152 (11th Cir.1991) (en banc) (citing *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046). "*Cronic* presumes prejudice where there has been an actual breakdown in the adversarial process at trial." *Toomey v. Bunnell,* 898 F.2d 741, 744 n. 2 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990). In *Cronic,* the Supreme Court stated:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California,* 386 U.S. 738, 743 [87 S.Ct. 1396, 1399, 18 L.Ed.2d 493] (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may

have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic,* 466 U.S. at 656–57, 104 S.Ct. at 2045–46 (footnotes omitted).

■ A criminal defendant is also protected from unfairness in the criminal process by the due process requirement that his guilt be proved beyond a reasonable doubt. The Supreme Court has explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The Supreme Court has also stated that "[d]ue process commands that no man shall lose his liberty unless *the Government has borne the burden of* producing the evidence and *convincing the factfinder of his guilt.*" *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) (emphasis added). When a defense attorney concedes that there is no reasonable doubt concerning the only factual issues in dispute, the Government has not been held to its burden of persuading the jury that the defendant is guilty.

The Supreme Court recognized in *Cronic* that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. The Court identified the complete denial of counsel or the deprivation of effective representation at a critical stage of an accused's trial as justifying a presumption of prejudice. *Id.* at 659, 104 S.Ct. at 2047. The Supreme Court stated that

> [c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659–60, 104 S.Ct. at 2047.

■ The *Strickland* test, requiring a showing of prejudice caused by counsel's ineffectiveness, is applicable (1) in cases where the record reflects that an attorney's errors or omissions occurred during an inept attempt to present a defense, or (2) that he or she engaged in an unsuccessful tactical maneuver that was intended to assist the defendant in obtaining a favorable ruling. *See, e.g., Harding v. Lewis,* 834 F.2d 853, 859 (9th Cir.1987) (attorney's advice to criminal defendant that he should insist on representing himself as a deliberate means of injecting reversible error into the proceedings is not presumed prejudicial), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); *McInerney v. Puckett,* 919 F.2d 350, 353 (5th Cir.1990) (defense counsel's failure to file a timely notice of insanity defense and lack of preparation for trial do not warrant application of per se rule of prejudice); *Woodard v. Collins,* 898 F.2d 1027, 1029 (5th Cir.1990) (counsel's tactical decision to investigate some issues but not others, or to conduct virtually no investigation, is governed by *Strickland,* not by *Cronic*); *Gardner v. Ponte,* 817 F.2d 183, 187 (1st Cir.) (ineffective assistance of counsel claim based on counsel's failure to object to a jury instruction requires a showing of prejudice to the defense pursuant to *Strickland* rather than *Cronic*), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).

Proof of prejudice is also required where the fundamental fairness of the challenged proceeding has not been affected and the integrity of the legal process has not been jeopardized. *See, e.g., United States v. Perry,* 857 F.2d 1346, 1350 (9th Cir.1988) (issuance by the Government of a post-indictment subpoena of a target defendant's counsel does not "jeopardize[ ] the integrity of the legal process"); *United States v. Birtle,* 792 F.2d 846, 848 (9th Cir.1986) ("The failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fair-

ness of the appellate process as to warrant application of a per se rule of prejudice.").

We are persuaded that Mr. Ochoa's conduct caused a breakdown in our adversarial system of justice in this case that compels an application of the *Cronic* exception to the *Strickland* requirement of a showing that the outcome of the trial would have been different without counsel's errors or omissions. *See Cronic,* 466 U.S. at 659–60, 104 S.Ct. at 2047. Mr. Ochoa's concession in his argument to the jury that there was no reasonable doubt concerning the element of intimidation, and whether Swanson was the perpetrator of the bank robbery, does not demonstrate mere negligence in the presentation of his client's case or a strategy to gain a favorable result that misfired. Instead, Mr. Ochoa's statements lessened the Government's burden of persuading the jury that Swanson was the perpetrator of the bank robbery. Mr. Ochoa's conduct tainted the integrity of the trial. The Supreme Court instructed in *Cronic* that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047.

Mr. Ochoa's closing argument was not merely a negligent misstep in an attempt to champion his client's cause. The concession that there was no reasonable doubt that his client robbed the bank was an abandonment of the defense of his client at a critical stage of the criminal proceedings. In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the Supreme Court recognized the importance of the closing argument to a criminal defendant. The Court found that a New York law which allowed every judge in a nonjury criminal trial to deny counsel any opportunity to make a closing argument deprived the accused of his constitutional right to the assistance of counsel. *Id.* at 865, 95 S.Ct. at 2556. The Court stated that

[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

*Id.* at 862, 95 S.Ct. at 2555.

A lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to "subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047. The Tenth Circuit has recognized that "an attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'" *Osborn v. Shillinger,* 861 F.2d 612, 625 (10th Cir. 1988) (quoting *Cronic,* 466 U.S. at 666, 104 S.Ct. at 2051). Mr. Ochoa's statements conveyed to the jury his belief that his client was guilty. Mr. Ochoa failed to function as the Government's adversary during his summation to the jury.

It is not necessary that a defendant demonstrate that a deprivation of the assistance of counsel at a critical stage of a criminal proceeding resulted from governmental action. In *Javor v. United States,* 724 F.2d 831 (9th Cir.1984), we held that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." *Id.* at 833.

In *Green v. Arn,* 809 F.2d 1257 (6th Cir.), *vacated on other grounds,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated,* 839 F.2d 300 (1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989), the Sixth Circuit held that the absence of a criminal defendant's counsel, during the cross-examination of a key government witness by an attorney for a codefendant, violated the defendant's sixth amendment right to counsel. *Id.* at 1263. The court held that these circumstances

compelled reversal without further inquiry regarding the impact of this constitutional deprivation. *Id.*

The Seventh Circuit has held that a criminal defendant was denied the assistance of counsel at a critical stage of the criminal proceedings when his attorney was absent when the verdict was returned. *Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir. 1985). The court held that "a defendant need not affirmatively prove prejudice under the second prong of the *Strickland* test in order to establish a Sixth Amendment violation based on the lack of defense counsel's assistance at a critical stage of the criminal proceedings." *Id.*

In *Harding v. Davis*, 878 F.2d 1341 (11th Cir.1989), court appointed counsel for a defendant in a state criminal proceeding remained silent throughout most of the trial and failed to object when the court directed a verdict against the defendant. *Id.* at 1343. The Eleventh Circuit held that the attorney's "silence at the point the verdict was directed against his client was so likely to prejudice [the defendant] that the cost of litigating its effect is unjustified and prejudice is presumed." *Id.* at 1345 (citing *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046).

In each of these cases prejudice was presumed, because of an actual or constructive denial of the assistance of counsel during a critical stage of the criminal proceedings. *See Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). The circumstance presented in this matter demonstrates the constructive absence of an attorney dedicated to the protection of his client's rights under our adversarial system of justice. Once Swanson's court appointed attorney told the jury that there was no reasonable doubt regarding his client's identity as the perpetrator of the crime charged against him, he ceased to function as defense counsel. "An effective attorney 'must play the role of an active advocate, rather than a mere friend of the court.'" *Osborn*, 861 F.2d at 624 (quoting *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985)). In-stead of serving as his client's advocate during closing argument, Mr. Ochoa abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecutor in her efforts to persuade the jury that there was no reasonable doubt that Swanson was the person who intimidated the victims and robbed the bank.

Mr. Ochoa's abandonment of his duty of loyalty to his client by assisting the prosecutor also created a conflict of interest. In *Osborn*, the Tenth Circuit commented as follows:

A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest. Such an attorney, like unwanted counsel, "'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition.

861 F.2d at 629.

The Government has failed to identify any strategy that can justify Mr. Ochoa's betrayal of his client. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." *Cronic*, 466 U.S. at 656–57 n. 19, 104 S.Ct. at 2045–46 n. 19. By arguing that no reasonable doubt existed regarding the only factual issues in dispute, Mr. Ochoa shouldered part of the Government's burden of persuasion.

We cannot envision a situation more damaging to an accused than to have his own attorney tell the jury that there is no reasonable doubt that his client was the person who committed the conduct that constituted the crime charged in the indictment. We recognize that in some cases a

trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges. *See United States v. Bradford,* 528 F.2d 899, 900 (9th Cir.1975) (counsel conceded that the evidence identifying the defendants as the perpetrators was overwhelming, but argued that other elements of the crime were not proved in an attempt to persuade the jury to find the defendants guilty only of a lesser offense), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1512, 47 L.Ed.2d 764 (1976). Mr. Ochoa's conduct was not a tactical admission of certain facts in order to persuade the jury to focus on an affirmative defense such as insanity. *See Duffy v. Foltz,* 804 F.2d 50, 52 (6th Cir.1986) (counsel's admission that his client committed the acts alleged but that he was not guilty by reason of insanity considered to be a trial tactic). Here, Mr. Ochoa told the jury that no reasonable doubt existed as to his client's identity as the perpetrator of the only crime charged in the indictment.

During oral argument, the Government expressed concern about its inability to prevent an attorney from repeating Mr. Ochoa's conduct in future trials in order to guarantee a reversal on appeal in any case where the evidence of guilt is overwhelming. In *Toomey v. Bunnell,* 898 F.2d 741 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990), and *Harding v. Lewis,* 834 F.2d 853 (9th Cir.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988), we rejected the contention that the commission of deliberate misconduct by a defense attorney with his client's connivance warranted a per se rule of prejudice. *Toomey,* 898 F.2d at 744 n. 2; *Harding,* 834 F.2d at 859. We declined to create a "foolproof defense." *Id.* There is no evidence in this record that Swanson conspired with his court appointed attorney to create reversible error in this matter. Our holding that a per se rule of prejudice is required under the facts presented in this record will not create a "foolproof defense" for criminal defendants. Criminal defense lawyers are bound by the rules of professional conduct. If these rules are violated, counsel will

expose himself to bar association discipline. We are confident that ethical defense lawyers will not emulate Mr. Ochoa's conduct in this matter to gain a temporary advantage over the Government. We strongly suspect that there will be a retrial in this matter. We do not anticipate that defense counsel's indefensible tactic will be repeated.

The American Bar Association Standards for Imposing Lawyer Sanctions provide that "[r]eprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." Std. 4.43. The Arizona Rules of Professional Conduct provide that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." 17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 1.3. The comment to ER 1.3 states that "[a] lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Violation of these standards should be reported by the court and opposing counsel. *See, e.g.,* American Bar Association Model Code of Professional Responsibility, Canon 1, EC 1–4 ("A lawyer should reveal voluntarily to [proper] officials all unprivileged knowledge of conduct of lawyers which he believes clearly to be in violation of the Disciplinary Rules."); 17A A.R.S. Sup.Ct. Rules, Code of Judicial Conduct, Rule 81, Canon 3B(3) ("A judge should report what he believes clearly to be professional misconduct of a judge or lawyer to the appropriate disciplinary agency."). The clerk is directed to serve a copy of this opinion on the State Bar of Arizona.

REVERSED.

### APPENDIX

Mr. Ochoa: May it please the Court, Ms. Cerow [the prosecutor], ladies and gentlemen of the jury, again this is my last chance to talk to you and the first thing I want to do, like Ms. Cerow, I want to thank you for serving as jurors in this case.

It's been a very short case, but you have played a very, very significant role in our judicial system and because you took the time to serve as jurors I do want to thank you for that.

I'm not going to sit up here or stand up here and insult your intelligence, but I do want to give you a little lesson on criminal justice.

Each one has a role in this courtroom. She [Ms. Cerow] has a duty of presenting evidence to try to prove my client guilty beyond a reasonable doubt.

My job as an attorney is to try to raise reasonable doubt, or to make sure that she proves her case beyond a reasonable doubt.

The Judge as he sits up there, he is not the judge of the facts. The only thing that he does up here, he controls the law, and makes decisions on the law. He has made decisions both in Court and out of Court that pertain to the law that you have no concern about. But that is his function.

Ultimately you will have the function to determine the facts from the testimony of the witnesses, and then ultimately to determine whether my client is guilty or not. That is how our judicial system works and it works very well, because people like yourselves are willing to serve.

But one thing I do want you to appreciate, I, like I said, *the evidence in this case, ladies and gentlemen, is overwhelming and I'm not going to sit here and insult your intelligence.*

I have—the reason why I want to come before you, I told you to listen to all that evidence, for reasons that are not to concern you, you do not—I don't have that now, but I still want you to know something, that a person in this country has the right to stand by his plea of not guilty.

That is not true in many other countries. In a lot of countries a person is presumed guilty and he must prove his innocence. But in our country a person is presumed innocent and it is the Government that must prove him guilty.

And that works very well, it protects our citizens, it protects you and it protects any-one in this country that is charged with a crime and until 12 people, members of his peers, find him to be guilty, then, and only then, is he found guilty.

He has chosen to exercise that, ladies and gentlemen, and regardless of what you do inside there, don't hold that against him, because he has exercised a constitutional right.

Now, just to give you some examples of why we sometimes go to trial, *even though I don't think in this case it comes to the level of reasonable doubt,* but why you do have trials and why sometimes even witnesses—you have heard testimony from some of the different witnesses. And even themselves on a short case, a simple case, there was inconsistency.

*Again in this case, I don't think it really overall comes to the level of raising reasonable doubt.* But this is my function. You will recall some—one witness said that my client was in the bank maybe one to two minutes and another one said two to three minutes, and another one said, anywhere from 10 to 15 minutes.

One witness even said that my client had a shirt, or his tie untied. If you will look at the photograph, you will see that it was perfectly tied up.

So see these are little inconsistencies that witnesses sometimes make.

Some witnesses said that they clearly heard my client say that "This is a bank robbery." But there were a couple of witnesses—one witness Ms. McMullen, Lisa McMullen, right next to Ms. Estrella, who never heard that.

*And, I only—the only reason I point this out, not because I am trying to raise reasonable doubt now, because again I don't want to insult your intelligence,* but I do point this out that these are the reasons why you go to trial sometimes.

And I just don't want you to think that the Government, the Court, and all, that are wasting their money in things like this. There is a specific reason and I want you to appreciate it, that you received a good lesson in the judicial system.

I wish I had more on behalf of my client to argue, but like I say, just like the Government, I don't make the facts. I have to live with the facts and my client has to live with those facts and I have to live with them too.

As an attorney I would be derelict in my duty if I didn't try to raise reasonable doubts. There is some question as to some of the things that took place in that bank, but *ultimately I believe there was intimidation* and for me to tell you that those clerks were not in fear, and you as women—are women and most of those clerks were women, for me to say that they were not fearful, I think that would be begging the issue.

But again, ladies and gentlemen, regardless of what you do in there, I do want to thank you for serving as jurors and I do hope you go away with a better understanding of our system.

And sometimes many people ask me, "Why do you defend someone when the evidence is overwhelming?" Because I am defending the system. I am defending a tradition. I am defending something that is very sacred to our form of Government, and that is that a man is presumed innocent until proven guilty.

*And if he is proven guilty, don't hesitate in saying so and when you go home tonight don't ever look back and say "Did I do the right thing?"* If your conscience dictates that that was the right thing to do, you have done your part, just like the Judge has done his part, and I have done my part, and Ms. Cerow has done her part.

Again, ladies and gentlemen, I want to thank you for serving on this jury.

Thank you very much.

July 26, 1989, Reporter's Transcript at 212–16 (emphasis added).

HUG, Circuit Judge, concurring opinion:

I add this concurring opinion to emphasize my strong feeling that the representation afforded by the defense counsel in this case undermines the basis of the adversary system. To the extent that the dissent characterizes the defense counsel's representation as adequate or fulfilling the responsibilities of defense counsel, I most strongly disagree.

Defense counsel apparently believed that he fulfilled his obligation to the defendant by giving a little lecture on the operation of the criminal justice system. He failed to note that his obligation is not to be an independent observer and factfinder but, instead, an advocate for his client.

The American system of law is based on the adversary system—the prosecution presents the case in the light most persuasive to the Government's point of view; the defense counsel is to defend the case in the way that can best represent the defendant. The judge instructs on the law, and the jury renders the verdict. It is not the function of the defense counsel to insert his personal opinion as to whether a reasonable doubt has been established. That is for the jury.

I don't see how defense counsel's argument can be read other than that, in his opinion, he finds no reasonable doubt as to the guilt of the defendant. However, even if read, as the dissent contends, that counsel is just referring to certain elements of the case—identification and intimidation—these were the only possible bases for acquittal. Defense counsel is, in effect, saying that in his opinion there is no basis for acquitting the defendant.

In my opinion, he, in effect, said the defendant is guilty, and members of the jury should not feel bad about finding him guilty. This not only fails to uphold the responsibility of defense counsel, but it is also wrong from another standpoint. There are many cases that uphold admonitions by the trial court that defense counsel is not to inform the jury of his or her opinion of the guilt or innocence of the defendant. Customarily, this is when defense counsel asserts, in effect, "I believe this man is innocent because otherwise I would not be here defending him." This is universally held to be an improper argument. *United States v. Young,* 470 U.S. 1, 8–9, 105 S.Ct. 1038, 1042–43, 84 L.Ed.2d 1 (1984) ("Defense counsel, like the prosecutor, must refrain from interjecting personal

beliefs into the presentation of his case") (citations omitted); *United States v. Swafford*, 766 F.2d 426 (10th Cir.1985) ("... a lawyer's assertion of personal opinion during trial is an example of improper advocacy"); *United States v. Singer*, 660 F.2d 1295 (8th Cir.1981) ("[a] personal expression of [a] defendant's culpability, which inserts an extraneous and irrelevant issue before the jury, is ... objectionable"), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Alanis*, 611 F.2d 123 (5th Cir.) (an attorney may not express his personal opinion regarding a defendant's guilt), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980); *United States v. Bess*, 593 F.2d 749 (6th Cir.1979) (personal opinions of counsel have "no place at trial"); *United States v. Cain*, 544 F.2d 1113 (1st Cir.1976) ("It is, of course, elementary that statements of counsel as to personal belief or opinion are improper").

Here, this counsel is doing the same thing in reverse. "I know he's guilty so don't feel bad about doing your job and finding him guilty." He is just as much invading the province of the jury in this situation.

The defense counsel in this case had several options if he felt there was nothing he could say in reviewing the evidence that would be helpful to his client. First, he could have waived final argument and simply left the matter to the jury. Second, and preferably, he could have emphasized that in our criminal system a defendant can be found guilty only if guilt is found beyond a reasonable doubt and why that is an important factor in our system of justice. He could then have said: "You members of the jury have heard the evidence in this short trial and there is no point in my reviewing the evidence and the doubts and questions involved. It is up to you to evaluate the evidence and perform your vital responsibility in determining whether the Government has proved its case beyond a reasonable doubt." Third, the attorney could have made the same basic kind of remarks and tried to point out inconsistencies and weaknesses in the prosecution's case. He certainly was not obligated nor ethically authorized to do what he did.

In short, the defense counsel may have been inexperienced; he may not have understood his proper role; but certainly this type of performance by defense counsel cannot be condoned as being in any way adequate in meeting the standards of the legal profession.

WIGGINS, Circuit Judge, Dissenting:

I respectfully dissent from the views of my colleagues. They conclude that the few random expressions of defense counsel during closing argument constituted a "betrayal of his client," Maj. Op. p. 1076, sufficient to require a reversal without a showing of prejudice as permitted by *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). I disagree.

In my view, the majority is excessive in its condemnation of defense counsel. It accuses him of 1) causing a "breakdown in our adversarial system of justice," Maj. Op. p. 1075; 2) "taint[ing] the integrity of the trial", *id.;* 3) "lessening the Government's burden of persuading the jury that Swanson was the perpetrator of the bank robbery," *id.;* and 4) engaging in an "abandonment of the defense of his client at a critical stage of the criminal proceeding." *Id.* One would expect such powerful criticism to be justified by the grossest form of misbehavior by counsel. I fail to find it here.

Defense counsel found himself in a position that is perhaps all too familiar to the defense bar. His client had in fact engaged in the act for which he was indicted. The government had, and offered, the evidence necessary to prove it. Four bank employees identified Swanson as the robber. Two photographs of Swanson engaged in robbing the bank, taken by the bank's surveillance camera, were admitted into evidence. Swanson's fingerprints were found at the bank after the robbery. Swanson offered no defense witnesses and did not testify.

In these circumstances, the options available to defense counsel were exceedingly limited. His offer to establish that his

client was depressed and sought psychiatric help on the day of the robbery was denied prior to trial. Counsel's only recourse was to cross-examine the government's witnesses carefully. He did so, but was unable to cause any witness to express any uncertainty as to her identification of Swanson as the robber. When all was said and done, counsel was compelled to rely upon his argument to the jury. What was he to say? His client had offered no defense. His cross-examination of witnesses, which presented only minor inconsistencies on trivial matters, developed no holes in the government's case. Under these circumstances, defense counsel, I think, did his best. The majority has helpfully reproduced the entire closing argument as an appendix to their opinion. Read carefully, it is apparent that counsel characterized the government's evidence as "overwhelming" and not raising a "reasonable doubt" in certain particulars. There is no question that counsel was accurate in his characterizations. However, the majority condemns him for his statements and directs its opinion to the Arizona State Bar for appropriate disciplinary proceedings against counsel.

It is easy to condemn from our vantage point. We are not before the jury, empty handed, yet charged with the duty of providing an honest defense. We should, I believe, view counsel's performance less critically. He did not concede that his client was guilty. He did, however, admit that there was no reasonable doubt that one element of the government's case was true, namely, that the bank clerks were intimidated by the robber. Such an admission did not cause a collapse in the adversarial system, it did not taint the integrity of the trial, nor was it an abandonment by counsel of his client's defense. If it was error at all, it was not of the fundamental sort necessary to trigger the *Cronic* exception.

Because I believe the rule in *Cronic* is inappropriate here, I would apply the

analysis of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*'s prejudice prong, I would find that any error made by defense counsel was not prejudicial, and would therefore affirm Swanson's conviction.[1]

---

1. I have reviewed the trial and sentencing errors asserted by Swanson's new counsel on appeal and find them to be without merit.

