985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Josefina HERNANDEZ-OCAMPO, Defendant-Appellant.
 No. 92-10171.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Feb. 2, 1993.
 
 Appeal from the United States District Court for the District of Arizona; No. CR-90-00365-RCB, Robert C. Broomfield, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Josephina Hernandez Ocampo appeals her conviction, after a jury trial, of conspiracy to obtain false immigration documents in violation of 8 U.S.C. § 1255(a)(c)(6) and 18 U.S.C. §§ 371 & 1015(d). Ocampo contends that she received ineffective assistance of counsel because her attorney conceded her guilt in his closing argument. We review de novo, United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991), and we affirm.
 
 
 3
 * FACTS
 
 
 4
 The evidence relating to Ocampo's offense was developed during an undercover investigation by the Immigration and Naturalization Service. Fidel Ortiz, who became an informant for the INS, met Ocampo in a bar in Phoenix. Ocampo learned that Ortiz was in the United States illegally and suggested that he apply for amnesty. Ortiz informed her that he previously had applied but had been rejected because of his criminal record. Ocampo suggested that Ortiz apply again using a false birth certificate, and told him that she knew where he could get one. She also told him that he might be able to use her deceased husband's documents.
 
 
 5
 Before revealing his discussions with Ocampo to the INS, Ortiz had a brief relationship with Ocampo during which Ocampo suggested marriage as a way for Ortiz to stay in the United States. Ortiz subsequently began working for the INS in an undercover capacity. During the course of the investigation, Ocampo introduced Ortiz to her sons-in-law, who made arrangements for Ortiz to travel to Las Vegas to obtain a false birth certificate. Ortiz introduced Ocampo to two women who needed to obtain false birth certificates, both of whom also were cooperating with the INS in the investigation.
 
 
 6
 In July 1990, Ortiz and the two other INS informants met Ocampo at her home to go to Las Vegas. Several other people seeking false papers were there, and they all drove to the home of Ocampo's daughter and son-in-law in Las Vegas. Ortiz and the two women were taken to the "Diana Hernandez Immigration Office" in Las Vegas, where they completed amnesty applications using false information and received falsified documents. The applications and false documents later were submitted to the INS.
 
 
 7
 At trial, Ocampo was represented by David Ochoa, who was appointed by the district court under the Criminal Justice Act. During his closing argument, Ochoa initially argued that Ocampo lacked knowledge of any criminal activity, and that the government's case amounted to "guilt by blood," i.e. the government was suggesting that Ocampo was guilty because she was related to persons who had engaged in illegal activity. Ochoa also argued that much of the government's case depended on Ortiz's credibility. In particular, Ochoa argued:
 
 
 8
 For money, [Ortiz] betrays a friend.... Here's a man, if you want to believe his testimony, he only had sex with [Ocampo] twice, but yet they talked about marriage. For $1,000 [he] was trying to cause her harm. So you judge his credibility....
 
 
 9
 And ladies and gentlemen, I can't honestly look you straight in the eye and say she wasn't going to do something wrong toward Fidel [Ortiz], because she knew he was a convicted felon. She knew he had no right to be in this country. And she was going to use some of her husband's ex-papers to see if she could help him.
 
 
 10
 And if you want to find my client guilty, you can. I guess technically he was--she was guilty, because she knew that this particular man was not entitled to anything. And the Court is probably going to instruct you that motive is no defense, and that you can convict her for that, because motive is no defense. But was that her motive? For her goodness because she thought some man liked her, but turns around and sells her for $1,000, she did something wrong? ...
 
 
 11
 Now the Court is going to instruct you on conspiracy.... If her family was involved in this, again it's not guilt by blood. She has to be knowingly and intentionally a member of that conspiracy. And the fact that she knows her relatives may be doing something wrong, that does not make her guilty.
 
 
 12
 And I think, ladies and gentlemen, if you keep your eye on the ball, and follow the instructions that the Court will give you, that the Government has not proven its case beyond a reasonable doubt, unless you want to find that because she was willing to help someone that she thought cared for her, in that instance she was trying to do--she did something wrong, and because of her good motive she got in trouble. So yes, if you want to find her guilty, I guess technically you can. But I don't think that's what Congress had in mind when they said we're going to punish somebody. Thank you.
 
 
 13
 December 13, 1991, Reporter's Transcript at 109-11 (emphasis added).
 
 
 14
 When Ochoa had finished his argument, the prosecutor requested a side-bar conference. He brought to the district judge's attention this court's decision in United States v. Swanson, 943 F.2d 1070 (9th Cir.1991), which had reversed a conviction on the ground that Ochoa, who also represented Swanson, rendered ineffective assistance of counsel by conceding during closing argument that no reasonable doubt existed regarding the factual issues in dispute. See id. at 1071. The prosecutor stated his concern that Ochoa's argument that Ocampo was "technically guilty" also might constitute ineffective assistance. Ochoa stated that he did not think he had abandoned his client, and the district court concluded that it could not "direct defense counsel to make any particular kind of argument." The district court made a finding that "Mr. Ochoa's representation of his client under the facts as I understand them, has been good and effective, and that he's used whatever, in fact, will enable him to make a defense to his best advantage, and to his client's best advantage."
 
 
 15
 The jury convicted Ocampo, and the district court sentenced her to 8 months of incarceration to be followed by 36 months of supervised release. Ocampo timely appealed.
 
 II
 DISCUSSION
 
 16
 Ocampo contends that she received ineffective assistance of counsel because Ochoa conceded her guilt in his closing argument. We disagree.[1]
 
 
 17
 To demonstrate ineffective assistance, a defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 1. Deficient Performance
 
 18
 Deficient performance is shown when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. A reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance claim. Id. at 689; Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984) (per curiam). For example, "in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges." Swanson, 943 F.2d at 1075-76 (citing United States v. Bradford, 528 F.2d 899, 900 (9th Cir.1975), cert. denied, 425 U.S. 914 (1976)).
 
 
 19
 Ocampo has satisfied the first Strickland requirement; she has shown that Ochoa's performance was deficient. Ochoa's decision to tell the jury that Ocampo was "technically guilty," but that she wanted to help Ortiz because of her relationship with him, cannot be considered a reasonable tactical decision. Immediately after Ochoa stated that Ocampo only wanted to help Ortiz because she thought he cared about her, Ochoa conceded that good motive was not a defense. Accordingly, even if Ochoa's argument were an attempt to win the jury's sympathy and effect jury nullification, it would not have been a reasonable strategy.
 
 
 20
 Moreover, the indictment charged Ocampo with only one count of conspiracy; Ochoa could not concede her guilt on one charge in the hope that the jury would acquit her on others, nor was there a lesser included offense. Cf. Bradford, 528 F.2d at 900 (counsel conceded that the evidence identifying the defendants as the perpetrators was overwhelming, but argued that other elements of the crime had not been proved in an attempt to persuade the jury to find the defendants guilty only of a lesser included offense); see also United States v. Guerrero, 938 F.2d 725, 729-30 (7th Cir.1991) (defense counsel argued that the defendant was involved in a separate and distinct conspiracy to distribute cocaine, but was not involved in the conspiracy charged in the indictment); United States v. Simone, 931 F.2d 1186, 1195-97 (7th Cir.) (given the strength of the government's case, defense attorney made a reasonable tactical decision to concede defendant's guilt to certain drug charges that carried lighter sentences, while forcefully arguing defendant's innocence on charges with higher penalties), cert. denied, 112 S.Ct. 584 (1991).
 
 2. Prejudice
 
 21
 To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.
 
 
 22
 The Strickland test, requiring a showing of prejudice caused by counsel's ineffectiveness, is applicable (1) in cases where the record reflects that an attorney's errors or omissions occurred during an inept attempt to present a defense, or (2) that he or she engaged in an unsuccessful tactical maneuver that was intended to assist the defendant in obtaining a favorable ruling.
 
 
 23
 Swanson, 943 F.2d at 1073 (collecting cases). In contrast, if counsel's conduct is so egregious that it constitutes an abandonment of the client's defense and results in an actual breakdown in the adversarial process at trial, prejudice is presumed. United States v. Cronic, 466 U.S. 648, 656-57 (1984); Swanson, 943 F.2d at 1074.
 
 
 24
 Courts have distinguished "between a statement which constitutes a tactical retreat, and one which amounts to a 'surrender of the sword.' " Messer v. Kemp, 760 F.2d 1080, 1090 n. 6 (11th Cir.1985) (quoting Wiley v. Sowders, 647 F.2d 642, 649 (6th Cir.), cert. denied, 454 U.S. 1091 (1981)), cert. denied, 474 U.S. 1088 (1986). "[I]t is a 'complete concession of the defendant's guilt' which constitutes ineffective assistance of counsel." Messer, 760 F.2d at 1090 n. 6 (quoting Francis v. Spraggins, 720 F.2d 1190, 1194 (11th Cir.1983), cert. denied, 470 U.S. 1059 (1985)).
 
 
 25
 Although we disapprove of Ochoa's conduct, we cannot conclude that his closing argument, with its statements that his client was 'technically guilty," amounted to an abandonment of his client's defense or resulted in a breakdown of the adversarial process. Nor was it, in context, a complete concession of guilt. Unlike the argument he made in Swanson, Ochoa's argument here included contentions that the government had not proved its case beyond a reasonable doubt, and a challenge to the credibility of the government's primary witness. See, Swanson, 943 F.2d at 1074. (Ochoa's concession that there was no reasonable doubt that Swanson had committed the offense constituted an abandonment of the client's defense). We conclude that Ochoa's closing argument was an inept attempt to win the sympathy of the jury and cause jury nullification. Therefore, the Cronic exception does not apply; Ocampo must demonstrate prejudice to prevail on her claim. See Strickland, 466 U.S. at 694; Swanson, 943 F.2d at 1073. In light of the overwhelming evidence against her, Ocampo has not shown a reasonable probability that, but for Ochoa's error, the outcome of the trial would have been different. See Strickland, 466 U.S. at 694. Accordingly, she has not demonstrated prejudice, and her claim of ineffective assistance of counsel fails. See id.[2]
 
 
 26
 In Swanson, this court noted the government's "concern about its inability to prevent an attorney from repeating Mr. Ochoa's conduct in future trials in order to guarantee a reversal on appeal in any case where the evidence of guilt is overwhelming." 943 F.2d at 1076. Swanson further noted that criminal defense attorneys are bound by the rules of professional conduct and expressed confidence that ethical defense attorneys would not emulate Ochoa's conduct. Id. With respect to Mr. Ochoa himself, that confidence apparently was misplaced; his closing argument in this case was made several months after Swanson was decided. Therefore, we direct the clerk to serve a copy of this memorandum on the State Bar of Arizona. See id. (" 'A judge should report what he believes clearly to be professional misconduct of a judge or lawyer to the appropriate disciplinary agency.") (quoting 17A A.R.S.Sup.Ct.Rules, Code of Judicial Conduct, Rule 81, Canon 3B(3)) (additional citations omitted).
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Although an ineffective assistance of counsel claim generally is raised in a collateral attack on a conviction, we may consider such a claim "on direct appeal where the record is sufficiently complete to allow us to decide the issue." Swanson, 943 F.2d at 1072 (quotation omitted). Because Ocampo's ineffective assistance claim is based solely on Ochoa's closing argument, the record is sufficient to allow us to decide the claim in this appeal. See id. Moreover, the district court already has ruled on her claim
 
 
 [2]
 Ocampo further contends that Ochoa's closing argument violated her right to due process because it was the functional equivalent of a guilty plea, which was made without any inquiry by the court to ensure that it was knowing and voluntary. Because we have concluded that Ochoa's argument did not amount to a complete concession of guilt, we reject Ocampo's due process claim