Filed 5/31/24  P. v. de Leon CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MANUEL CALDERON DE LEON,<br><br>    Defendant and Appellant. | A166057<br><br>(Marin County Super. Ct. No. SC208457A) |

Defendant Juan Manuel Calderon de Leon appeals a final judgment following a jury trial in which he was convicted of multiple sex crimes against John Doe, who was six years old at the time of the offenses.  Calderon de Leon argues that reversal is warranted because he was deprived of effective assistance of counsel during critical stages of his trial to the point where prejudice should be presumed under *United States v. Cronic* (1984) 466 U.S. 648 (*Cronic*).  We disagree and affirm.

### I.  BACKGROUND

In November 2019, an information charged Calderon de Leon with: (1) lewd acts upon a child (Pen. Code,[1] § 288, subd. (a); counts 1, 2, and 5); (2) oral copulation with a child (§ 288a, subd. (c)(1); counts 3 and 6); and

_____

[1] All further statutory references are to the Penal Code.

1

(3) sodomy of a child (§ 286, subd. (c)(1); counts 4 and 7). As to counts 4 and 7, the information alleged that the offenses were violent felonies within the meaning of section 667.5, subdivision (c)(4). As to all counts, the information alleged that Calderon de Leon engaged in substantial sexual conduct within the meaning of section 1203.066, subdivision (a)(8).

Following trial, the jury found Calderon de Leon guilty of all counts. The trial court sentenced Calderon de Leon to a total of 15 years in prison, consisting of three years on count 4 and consecutive terms of two years on each of the remaining six counts. Calderon de Leon timely appealed.

A. <u>John Doe's Testimony</u>

John Doe was 23 years old at the time he testified at the trial. Calderon de Leon is his half-brother and is 12 years older than him. When John Doe was six years old, Calderon de Leon moved in with him, their mother, and his younger sister. Calderon de Leon was 18 years old at the time and was often left in charge of watching John Doe and his sister while their mother was at work.

John Doe testified that on one occasion when he was six years old, he was playing a video game in the master bedroom when Calderon de Leon came in and asked if he wanted to play a different game. John Doe's sister also came into the room but Calderon de Leon "shooed her away." Calderon de Leon told John Doe to take off his clothes and proceeded to take off his own clothes. After they were both naked, Calderon de Leon kissed John Doe on the mouth and instructed John Doe to perform oral copulation, which John Doe did. Calderon de Leon then told John Doe to get under the bed sheets with him. Once they were both under the sheets, Calderon de Leon anally penetrated John Doe with his penis. Calderon de Leon then led John Doe into the bathroom, and the two got into the shower together. Calderon

2

de Leon bathed John Doe while touching his penis and "behind." Afterwards, Calderon de Leon told John Doe not to tell anyone about what they did, and "that God was going to forgive [them]."

On another day when John Doe was six years old, Calderon de Leon came into the master bedroom while John Doe was on the bed, shut the door, and asked if he wanted to play the game again. John Doe responded yes. After Calderon de Leon instructed him to take his clothes off, John Doe recalled the sequence of events as similar to the first incident: "Kissing, oral copulation, and then penetration." But there was one main difference: This time, Calderon de Leon instructed John Doe to get "on [his] hands and knees[] with [his] behind in the air" before Calderon de Leon anally penetrated him. Afterwards, Calderon de Leon again told John Doe not to tell anyone about what had happened.

When John Doe was seven or eight years old, Calderon de Leon moved out to live with his wife. When John Doe was a junior in high school, Calderon de Leon moved back in with him and their mother. This was a difficult time for John Doe because he "was scared that it was going to happen again" and found excuses not to be at home. Later that same year, John Doe asked his best friend, C.L., to go on a drive with him. After driving for a bit, John Doe parked the car and told C.L. that Calderon de Leon had sexually assaulted him when he was six years old. John Doe cried and told C.L. not to tell anyone. Calderon de Leon moved out again during John Doe's senior year in high school.

The next year in September 2018, John Doe told his mother about the sexual abuse after she commented that it broke her heart that her two sons no longer spoke to one another. John Doe soon realized that his family did not "have the capacity to solve these problems on their own" and reported

3

the abuse to law enforcement in November 2018. The police asked John Doe to participate in a recorded " 'pretext phone call' " with Calderon de Leon.[2] During two calls which were made by John Doe on the same day, Calderon de Leon admitted to what he did when John Doe was younger and expressed regret.

Defense counsel did not cross-examine John Doe. Outside the presence of the jury, the trial court asked counsel why she did not cross-examine him. Counsel responded that she had discussed it with her client and that they "made a strategic decision" not to cross-examine John Doe because they believed "any further examination of the witness would actually hurt [Calderon de Leon], as opposed to support his case" given their strategy.

B. C.L.'s Testimony

C.L. testified that he and John Doe became best friends in high school. During their sophomore year, John Doe invited C.L. to go on a hike. Instead of hiking, however, John Doe drove them to a nearby parking lot and said that he wanted to tell C.L. about something that happened to him when he was very young. John Doe then shared that when he was six years old, he was sexually assaulted by Calderon de Leon. John Doe was emotional and had trouble getting his words out. Afterwards, John Doe asked C.L. to "not talk about it ever again." During their senior year in high school, John Doe had a brief conversation with C.L. about potentially reporting the incident to the police. The two otherwise did not discuss the details of the incident again. During cross-examination, defense counsel asked C.L. whether John Doe had shared any details about what happened. C.L. testified that John Doe mentioned the sexual assault occurred during a "family gathering at their place" in "a side room" and that Calderon de Leon had been drinking.

---

[2] Audio recordings of the two pretext calls were played for the jury.

C.  Defense's Opening and Closing Arguments

After the prosecution rested, defense counsel gave a brief opening statement and argued that "the evidence will show that [Calderon de Leon] is not guilty [and] that there is reasonable doubt in this case."  Defense counsel then rested without presenting any evidence.

During closing argument, defense counsel attacked the reliability of the audio recordings of the pretext calls and emphasized that they needed to be corroborated by other evidence.  Defense counsel then highlighted the inconsistencies between C.L.'s testimony and John Doe's testimony about the details of the abuse and argued that John Doe lied to C.L. about what happened and was therefore a dishonest witness.  Based on these inconsistencies, defense counsel asked the jury to return a verdict of not guilty.

## II.  **DISCUSSION**

Calderon de Leon contends that he was so denied effective assistance of counsel that it constituted structural Sixth Amendment error under *Cronic*.[3]

Generally, to prevail on a claim of ineffective assistance of counsel, a defendant must show deficient performance and prejudice; that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).)  In *Cronic*, however, the high court carved out three exceptions where prejudice is presumed and need not be shown.  (*Cronic,* 466 U.S. at pp. 658–659.)  "First and '[m]ost obvious' was the 'complete denial of counsel.'  [Citation.]  A trial would be presumptively unfair [] where the accused is

_____

[3] Calderon de Leon does not argue error under *Strickland, supra,* 466 U.S. 668, and concedes that any prejudice resulting from counsel's performance would be difficult to show on direct appeal based on the uncontradicted evidence at trial.

5

denied the presence of counsel at 'a critical stage,' . . . Second, . . . a similar presumption was warranted if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' [Citation.] Finally . . . where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected." (*Bell v. Cone* (2002) 535 U.S. 685, 695–696 (*Cone*).)

Calderon de Leon argues that the first and second *Cronic* exceptions apply here because defense counsel failed to cross-examine John Doe and gave an improper opening statement before resting her case without presenting any evidence. We disagree.

The first *Cronic* exception requires "the complete denial of counsel," which occurs "when counsel is either *totally absent*, or prevented from assisting the accused during a critical stage of the proceeding." (*Cronic, supra*, 466 U.S. at p. 659 & fn. 25, italics added.) Calderon de Leon contends that he was "effectively deprived of the assistance of counsel" during John Doe's testimony and the defense's opening statement. But there is no question that defense counsel was present during these stages of trial, and what Calderon de Leon really takes issue with is defense counsel's performance—which falls under the second *Cronic* exception and cannot be conflated with the first exception. Calderon de Leon cites to cases in which courts have held that cross-examination and an opening statement are considered "critical stages" of trial. These cases, however, do not support that the first *Cronic* exception can be met where counsel was *present* during these stages.[4]

---

[4] Calderon de Leon's reliance on *Glasser v. United States* (1942) 315 U.S. 60, 75–76 is inapposite as *Glasser* involved prejudice stemming from

The second *Cronic* exception—when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"—is also inapplicable here. (*Cronic, supra,* 466 U.S. at p. 659.) For this exception to apply, "the attorney's failure must be complete." (*Cone, supra,* 535 U.S. at p. 697.) As such, it "occurs so rarely as to be almost nonexistent." (*People v. Ruiz* (2023) 89 Cal.App.5th 324, 331.) In *Cone*, the defendant argued that the second *Cronic* exception applied based on his counsel's "failure to adduce mitigating evidence and [the] waiver of closing argument" during sentencing. (*Cone, supra,* 535 U.S. at p. 697.) The high court disagreed and held that *Strickland* applied to the defendant's claims because his "argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind." (*Ibid*.)

Here, defense counsel subjected the prosecution's case to "meaningful adversarial testing" at trial. (*Cronic, supra,* 466 U.S. at p. 659.) Although counsel did not cross-examine John Doe, she later explained to the trial court that this was a "strategic decision" that she and her client discussed and made together as they believed any further examination of John Doe would hurt their case. This made sense given the defense's strategy of using C.L.'s testimony to attack John Doe's credibility. (See *People v. Lucas* (1995) 12 Cal.4th 415, 436–437 ["Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel"].)

Further, defense counsel *did* cross-examine C.L. regarding the details John Doe had shared with him about the sexual abuse. In her closing

---

appointed counsel's conflict of interest and not any presumption of prejudice under a *Cronic* exception.

argument, counsel emphasized the inconsistencies between C.L.'s testimony and John Doe's testimony about these details to create doubt as to whether John Doe was a truthful witness.  Defense counsel then asked the jury to return a verdict of not guilty.  Although counsel's opening statement may have been unusual given that she immediately rested her case after giving the statement, this does not mean that she failed to oppose the prosecution's case such that prejudice should be presumed under *Cronic*.[5]

## III.  <u>DISPOSITION</u>

The judgment is affirmed.

---

[5] *United States v. Swanson* (9th Cir. 1991) 943 F.2d 1070, a case Calderon de Leon relies on in his reply brief, is easily distinguishable.  There, the court held that defense counsel's conduct "caused a breakdown in our adversarial system of justice" compelling the application of *Cronic* after counsel conceded during closing argument that there was no reasonable doubt his client committed the bank robbery in question.  (*Id*. at p. 1074.)

CHOU, J.

We concur.



SIMONS, Acting P. J.
BURNS, J.

*People v. Calderon De Leon* / A166057