Filed 3/3/15  P. v. Hughes CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONALD PIERRE HUGHES,<br><br>    Defendant and Appellant. | C071536<br><br>(Super. Ct. No. TF036608A) |

Defendant Ronald Pierre Hughes was charged in a first amended information with assault with intent to commit rape during the commission of a first degree burglary (Pen. Code, § 220, subd. (b); count 1)[1] and two counts of first degree burglary (§ 459; counts 2 & 3).  Counts 1 and 2 are based on the same incident.  At his arraignment, defendant pleaded guilty to the first degree burglary charges (counts 2 & 3), and thereafter was tried and convicted by a jury of the more serious charge of assault with intent to commit rape during the commission of a first degree burglary (count 1).  The trial court sentenced defendant to an aggregate term of life plus four years in state prison, consisting of life

_____

[1] Further undesignated statutory references are to the Penal Code.

1

with the possibility of parole on count 1, and a consecutive four years on count 3. The trial court imposed and stayed defendant's sentence on count 2 pursuant to section 654.

Defendant appeals. His primary contention is that his trial and conviction on count 1 following the trial court's acceptance of his plea of guilty to count 2, a lesser included offense of count 1, violated the double jeopardy clauses of the federal and state Constitutions. Alternatively, he claims that his conviction for count 2 must be dismissed because it is a lesser included offense of count 1. Defendant also asserts claims of instructional error and ineffective assistance of counsel.

We shall modify the judgment to dismiss defendant's conviction on count 2, and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

At his arraignment on December 15, 2011, defendant indicated that he wanted to enter guilty pleas to both counts of first degree burglary (counts 2 & 3). The prosecutor cautioned that "[b]y . . . pleading guilty to Count 2, he's essentially admitting to the enhancement of the [section] 220, which is a lifetime -- it's basically life -- life -- a life sentence. So by doing that, I just want to make sure that [defendant] understands that, that he's already -- one of the enhancements for the life sentence is in play now, that if he gets convicted on that [section] 220, it's an automatic life sentence. I mean that is my plan to convict him on that, but I just want to make sure that he understands that what he's doing right now is essentially getting to the first step of that enhancement. It's very unusual for people to do this this soon." Defendant said he understood what the prosecutor had said and confirmed that he had discussed the matter with his trial counsel. After advising defendant of the consequences of his pleas, the trial court asked the prosecutor to set forth a factual basis for counts 2 and 3. The prosecutor recited the following factual basis for count 2: "On September 2nd, 2011, the defendant entered the home of the victims, which is located in Tracy, California. . . . When he entered the home, he had the intent to commit the [sections] 220 or 261(a)(2) [(forcible rape)]. [¶]

2

Again, Judge, [defendant] shouldn't be pleading to this right now. When he entered the home, he attacked the victim in this matter, took off her underwear. She screamed. He attacked her. He struck her. She left the apartment." The trial court found there was a factual basis for counts 2 and 3, accepted defendant's guilty pleas as to those counts, and set count 1 for trial.

Trial on count 1 commenced on February 14, 2012. The following evidence was adduced during the prosecution's case-in-chief: At approximately 5:00 a.m. on September 2, 2011, Jane Doe was asleep with her nine-month-old baby when she heard a sound coming from the bathroom of her one bedroom apartment. Believing her boyfriend and father of her baby had returned from out of town, she went to the bathroom and called out, "Can I help you?" She pulled on the door knob, but the person inside the bathroom pulled the door shut. At that point, her baby began to cry, and she turned to return to her bedroom. As she did so, the person inside the bathroom, later identified as defendant, came up behind her and pushed her face down on her bed. He then straddled her as she lay on her back and demanded money. Doe told him she did not have any money and attempted to grab her cell phone. Defendant told her he had a gun and threatened to kill her if she reached for anything else. Doe kicked, screamed, and bit defendant, and defendant punched her in the head four times. Defendant continued to demand money, and Doe explained she was unemployed and did not have any money. Defendant remarked, "You got something in here," and when Doe assured him she did not, defendant said, "Well, you're gonna give me something." He then motioned to unzip his pants, and Doe kicked him in the genitals. Defendant removed Doe's underwear, pulled her toward him by her legs, and slid his hand up her thigh toward her vagina. He did not touch her vagina because she fought him off. Defendant eventually stopped and ran out of the apartment. At one point, Doe asked defendant if he was "going to rape me in front of [my] baby?" Defendant said he did not want to hurt her baby. Defendant never said he was going to rape her.

3

When defendant left, Doe called 911, and police were dispatched to her apartment at approximately 5:50 a.m. When they arrived, Doe was hysterical and shaking. Doe's bed was unmade, and there was a pair of white underwear on the floor next to the bed. There were muddy footprints outside the bathroom window, inside the apartment leading from the bathroom to the bedroom, and leading from Doe's apartment to defendant's nearby apartment. Mud also was smeared on the bed sheets. Defendant's fingerprints were found on the exterior of the bathroom window and on the interior bathroom door handle. Doe had scratch marks on the left side of her face and neck and injuries to her upper and lower lips.

A few days prior to the attack, defendant asked Doe where her boyfriend was, and she told him that he was in Chicago. Defendant asked her when her boyfriend would return, and she said she did not know. Defendant told Doe that he had his eye on her for quite some time.

At the close of the prosecution's case-in-chief, the transcript of the prior proceeding during which defendant entered his guilty pleas to counts 2 and 3 was admitted into evidence, and a portion of that transcript, including the factual basis for count 2, was read to the jury.

Defendant testified in his defense at trial and confirmed much of Doe's testimony concerning his entry into the apartment, the subsequent struggle, including punching Doe in the head multiple times, and his demands for money. He denied that he intended to sexually assault her and said that he only was looking for money or something of value. He pushed Doe onto the bed because he thought she was "running for a weapon or a phone." He denied ever getting on top of Doe or being on the bed, and when asked about the mud on the bed sheets, he said he used his feet to block her kicks while she was on the bed. He admitted Doe's "underwear got pulled down," but denied that he did so intentionally, stating that his "hand may have pulled her underwear while [he was] trying to get away from her." As for Doe's claim that he slid his hand up her thigh toward her

4

vagina, defendant said that his arm rubbed against her thigh as he was knocking her legs away. Defendant knew that Doe had a baby and that her boyfriend was not around but denied telling her he was interested in her a few days before the incident. Rather, he asked her about her boyfriend and told her to have her boyfriend call him. Another man "initiated something with her and . . . was talking to her while she was walking away." When asked why he did not leave after Doe told him she had no money, he said he tried to leave but "she was stead[ily] kicking and punching and grabbing me." Defendant was in Doe's apartment for 10 to 15 minutes.

DISCUSSION

I

Defendant's Continued Prosecution for Assault with Intent to Commit Rape During the Commission of a First Degree Burglary (Count 1) Following His Plea of Guilty to First Degree Burglary as Charged in Count 2 Did Not Violate Double Jeopardy

Defendant claims that "the trial court's acceptance of his plea of guilty to first degree burglary of Jane Doe as charged in count 2 (a lesser included offense of count 1) barred his subsequent trial and conviction of count 1 as a violation of double jeopardy . . . ." As we shall explain, double jeopardy is not implicated here.

"The double jeopardy clause of the Fifth Amendment to the Unites States Constitution guarantees that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' and is made applicable to the states through the due process clause of the Fourteenth Amendment. [Citation.] [¶] Protection against double jeopardy is also embodied in article I, section 15 of the California Constitution, which declares that '[p]ersons may not twice be put in jeopardy for the same offense.' " (*People v. Fields* (1996) 13 Cal.4th 289, 297-298.) While defendant is correct that first degree burglary and assault with intent to commit rape during the commission of a first degree robbery constitute the "same offense" for purposes of double jeopardy (see *People v. Bright* (1996) 12 Cal.4th 652, 660 ["greater and lesser included offenses constitute the 'same offense' for purposes of double jeopardy"], overruled on other grounds in *People*

5

*v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6; *People v. Dyser* (2012) 202 Cal.App.4th 1015, 1021 [first degree burglary is lesser included offense of assault with intent to commit rape during the commission of a first degree burglary]), the state's continued prosecution of defendant following his guilty plea did not violate double jeopardy.

The double jeopardy clause does not prohibit the state from prosecuting a defendant for multiple offenses in a single prosecution. (*Ohio v. Johnson* (1984) 467 U.S. 493, 500 [81 L. Ed. 2d 425, 434].) It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments in successive proceedings for the same offense. (*Id.* at pp. 497-498.)

The United States Supreme Court's decision in *Ohio v. Johnson* is instructive. There, the defendant was indicted for four offenses arising from the same incident and pleaded guilty to two of the offenses--involuntary manslaughter and grand theft. (*Ohio v. Johnson, supra*, 467 U.S. at p. 494.) Thereafter, the trial court granted the defendant's motion to dismiss the other two more serious charges--murder and aggravated robbery-- "on the ground that because of his guilty pleas, further prosecution on the more serious offenses was barred by the double jeopardy prohibitions of the Fifth and Fourteenth Amendments." (*Ibid.*) The United States Supreme Court disagreed, concluding that "prosecuting [the defendant] on the two more serious charges would not constitute the type of 'multiple prosecution' prohibited by the Double Jeopardy Clause." (*Ibid.*) The court explained that "[n]o interest of [the defendant] protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here [the defendant] offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against [defendant] without a trial. [The defendant] has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. The

6

acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses. [Citations.] There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws. [Citation.]" (*Id.* at pp. 501-502.)

The court's reasoning in *Ohio v. Johnson* is equally applicable here, where defendant offered to plead guilty to counts 2 and 3 with the understanding that he would thereafter be tried on count 1. Defendant had not been exposed to conviction on count 1 prior to his trial on the same. Nor has there been any of the governmental overreaching that double jeopardy is supposed to prevent. Accordingly, we hold that defendant's continued prosecution on count 1 following his plea of guilty to count 2 did not violate double jeopardy.

II

Defendant's Conviction for First Degree Burglary as Charged in Count 2 Must Be
Dismissed Because First Degree Burglary Is a Lesser Included Offense of Assault with
Intent to Commit Rape During the Commission of a First Degree Burglary

Defendant contends, and the People agree, that defendant's conviction for first degree burglary as charged in count 2 must be dismissed because first degree burglary is a lesser included offense of assault with intent to commit rape during the commission of a first degree burglary. We agree and shall dismiss count 2.

"In California, a single act or course of conduct by a defendant can lead to convictions 'of any number of the offenses charged.' [Citations.] But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses. [Citations.]" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)

As previously discussed, first degree burglary is lesser included offense of assault with intent to commit rape during the commission of a first degree burglary. (*People v. Dyser, supra,* 202 Cal.App.4th at p. 1021.) Accordingly, we will dismiss count 2.

### III
### Any Error in Failing to Instruct the Jury on First Degree Burglary as a Lesser Included Offense of Assault with Intent to Commit Rape in the Commission of a First Degree Burglary Was Harmless

Defendant next contends that the trial court erred in failing to sua sponte instruct the jury on first degree burglary as a lesser included offense of assault with intent to commit rape in the commission of a first degree burglary. As we shall explain, any error was harmless.

" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]' [Citation.] 'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 239.) Assuming for argument's sake that the trial court erred in failing to instruct the jury on first degree burglary as a lesser included offense of assault with intent to commit rape during the commission of a first degree burglary, we conclude that any such error was harmless.

We review an erroneous failure to instruct on lesser included offenses for prejudice according to the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Beltran* (2013) 56 Cal.4th 935, 955.) " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' [Citation.]" (*Ibid.*) "[T]he *Watson* test for harmless error 'focuses not on

8

what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result.' [Citations.]" (*Id.* at p. 956, italics omitted.)

While the jury in this case was not instructed on the lesser included offense of first degree burglary, it was instructed on the lesser offense of simple assault. Thus, contrary to defendant's assertion, the jury was not left with an all or nothing proposition. Had the jury believed that defendant did not intend to rape Doe, it could have found him guilty of the lesser offense of simple assault. It did not. Moreover, the evidence defendant intended to rape Doe is strong. He knew Doe's boyfriend was gone when he entered her apartment; he entered the apartment early in the morning when Doe was likely to be home; when Doe told defendant she did not have any money, he told her she was "gonna give [him] something"; there was mud smeared on the bed sheets indicating defendant, who had muddy shoes, had been on the bed; defendant pulled down Doe's underwear; Doe's underwear was on the floor when the police arrived; defendant remained in the apartment after Doe told him she did not have any money; and he did not take anything when he left. Although defendant testified that he accidentally pulled Doe's underwear down and denied intending to rape her, such evidence was relatively weak when compared to the evidence he did intend to rape Doe cited above.

Given the evidence and the jury's failure to find defendant guilty of the lesser offense of simple assault, we find that there is no reasonable probability defendant would have received a more favorable result at trial had the jury been instructed on the lesser included offense of first degree burglary.

9

IV

## Defendant Has Not Demonstrated That but for Counsel's Alleged Errors, He Would Have Obtained a More Favorable Result at Trial

Defendant argues that his attorney rendered ineffective assistance "by failing to object to the factual-basis statement proffered by the prosecutor -- which admitted all the elements of count 1 -- either at the time it was made or later when it was introduced [into] evidence at the trial on count 1."  We need not determine whether counsel's alleged errors amounted to ineffective assistance because defendant has not demonstrated a reasonable probability that but for counsel's error, the result would have been more favorable to him.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698 (*Strickland*).)

After advising defendant of the consequences of his guilty pleas, the trial court asked the prosecutor for a "factual basis . . . as to Count 2 and Count 3."  The prosecutor recited the following factual basis as to count 2:  "On September 2nd, 2011, the defendant entered the home of the victims, which is located in Tracy, California.  . . . When he entered the home, he had the intent to commit the 220 or 261(a)(2).  [¶]  . . . When he entered the home, he attacked the victim in this matter, took off her underwear.  She screamed.  He attacked her.  He struck her.  She left the apartment."  Defendant's trial counsel did not object to the factual basis, and the trial court found there was a factual basis for defendant's pleas to counts 2 and 3.  Thereafter, defendant pleaded guilty to counts 2 and 3.  The transcript containing the factual basis for defendant's guilty plea to count 2 was admitted into evidence at his trial on count 1 and was referenced by the prosecutor during his opening statement, cross-examination of defendant, and closing argument.

Defendant first contends that his trial counsel's conduct was so egregious as to constitute a complete abandonment under the United States Supreme Court's decision in *United States v. Cronic* (1984) 466 U.S. 648 [80 L.Ed.2d 657] (*Cronic*).)  "Under *Cronic*,

10

if defense counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable,' and the conviction must be reversed without further prejudice analysis. (*Id.* at p. 659.) 'A complete denial of counsel at a critical stage of the proceedings' is sufficient to trigger the *Cronic* presumption of prejudice. (*People v. Benavides* (2005) 35 Cal.4th 69, 86.) 'But when the defendant is represented by counsel, the [*Cronic*] presumption of prejudice will only stand when counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. (*Bell v. Cone* (2002) 535 U.S. 685, 695; *Cronic*, at p. 659.)' (*Benavides,* at p. 86.) Otherwise, 'specific errors and omissions' by trial counsel must generally be litigated as ineffective assistance of counsel claims under *Strickland*. (*Cronic,* at p. 657, fn. 20.)" (*People v. Banks* (2014) 59 Cal.4th 1113, 1169-1170 (*Banks*).)

*In Banks*, the defendant's trial counsel told the jury during her opening statement that the evidence would show that her client admitted to being present at the scene of the murder he was charged with committing but denied shooting the murder victim or raping a second victim. (*Banks, supra*, 59 Cal.4th at pp. 1168-1169.) After being advised that the prosecutor did not intend to introduce the defendant's confession, defense counsel did not persist, and during closing argument reminded the jury that some of the evidence the parties discussed during their opening statements was not presented and that " '[w]hat we said in opening statements and what we say now is not evidence in the case. What came from the stand is the evidence in the case.' " (*Id.* at p. 1170.) "Furthermore, counsel did not concede any critical element of the . . . murder, the robbery special circumstance, the attempted murder, or the rape charges." (*Ibid.*) Our Supreme Court held that the "defendant's ineffective assistance of counsel claim must be analyzed under *Strickland* because his 'argument is not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points.'

11

(*Bell v. Cone*, *supra*, 535 U.S. at p. 697; see *In re Avena* (1996) 12 Cal.4th 694, 727-728.)" (*Ibid.*) The same is true here.

In the present case, defendant's trial counsel failed to object when (1) the prosecutor included factual allegations not contained in the information and unnecessary to defendant's plea in his recitation of the factual basis for count 2. He also failed to object when the prosecutor introduced the transcript containing the factual basis for count 2 at the trial on count 1 and attempted to use defendant's failure to object to the same to argue that defendant admitted removing Doe's underwear and intending to rape her. Contrary to defendant's assertion, however, defense counsel's failure to object to the factual statement did not amount to an admission of the truth of the factual allegations recited by the prosecutor as a matter of law. (See *People v. French* (2008) 43 Cal.4th 36, 50-51.)[2] While the prosecutor argued that such was the case, defense counsel never conceded those "facts" at defendant's trial on count 1.[3] To the contrary, defense counsel argued defendant was not guilty of count 1 because he did *not* intend to rape Doe. During his opening statement, he told the jury that "[t]his case is about what [defendant's] intent was" and asserted that the evidence would *not* show that defendant intended to rape Doe. During his direct examination of defendant, he elicited testimony that defendant did not intend to remove Doe's underwear or sexually assault her in any

---

[2] For this reason we reject defendant's claim that "[t]he admissions made . . . in connection with [defendant's] plea of guilty to count 2, . . . were obtained in violation of his constitutional rights to trial by jury, to confrontation, and against self-incrimination." As just discussed, the failure to object to the factual basis did not amount to an admission. (*People v. French, supra,* 43 Cal.4th at pp. 50-51.)

[3] The prosecutor's argument was essentially that defendant's failure to object amounted to an admission under Evidence Code section 1221, the adoptive admission exception to the hearsay rule. Evidence Code section 1221 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."

12

way, chose Doe's apartment because the window was open, and entered the apartment intending to steal money or other valuables. During his closing argument, defense counsel argued defendant did not intend to rape Doe, emphasizing defendant's repeated demands for money and his explanation that his hand got caught on Doe's underwear during the struggle. He also suggested that defendant's hands were at his waist because he was attempting to protect his genitals from Doe's kicks and not because he was attempting to unzip his pants.

Because this is not a case where defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, defendant's ineffective assistance of counsel claim must be analyzed under *Strickland*. (*Banks, supra,* 59 Cal.4th at p. 1170.)[4]

In order to demonstrate prejudice under *Strickland*, defendant must show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, *supra*, 466 U.S. at p. 694.) Where no prejudice showing has been made, we need not determine whether counsel's performance was deficient. (*Id.* at p. 697.)

At trial, defendant admitted many of the factual allegations contained in the prosecutor's factual basis, including entering the apartment, pushing Doe onto the bed, striking Doe, and pulling down Doe's underwear. Moreover, there was strong evidence defendant intended to do more than just steal money or valuables--he knew Doe's boyfriend was gone when he entered her apartment, he had previously stated he had his eye on her, he entered the apartment at a time Doe would likely be home, he failed to

---

**4** As defendant points out, the "*Cronic* exception" was applied where defense counsel conceded during argument that there was no reasonable doubt as to the only factual issues in dispute, and therefore conveyed to the jury that counsel believed his client to be guilty. (*United States v. Swanson* (9th Cir. 1991) 943 F.2d 1070.) As detailed above, nothing comparable occurred here.

leave after Doe told him she had no money, he did not take anything when he left, there was mud smeared on the bed sheets indicating defendant had been on the bed, and Doe's underwear was on the floor next to the bed when the police arrived. On this record, we find there is no reasonable probability that defendant would have obtained a more favorable result at trial had the jury not learned about the factual basis given by the prosecutor for count 2 and defendant's failure to object thereto.

We reach the same conclusion with respect to defendant's assertion that his trial counsel was ineffective in failing to object when the prosecutor repeatedly asked defendant whether he believed Doe was a "liar" or was "lying" when she testified at trial. These isolated omissions do not fall within the *Cronic* exception; thus, they are subject to the *Strickland* analysis, and for the reasons set forth above, we conclude there is no reasonable probability that but for counsel's failure to object to the prosecutor's challenged questioning of defendant, the result would have been more favorable to him.

Accordingly, defendant's ineffective assistance of counsel claims fail.

V
Cumulative Error

Finally, defendant contends the cumulative effect of the alleged errors was prejudicial. The premise behind the cumulative error doctrine is that while a number of errors may be harmless taken individually, their cumulative effect requires reversal. (*People v. Bunyard* (1988) 45 Cal.3d 1189.) Any of the potential errors identified above "were harmless, whether considered individually or collectively. Defendant was entitled to a fair trial but not a perfect one. [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

DISPOSITION

The judgment is modified to dismiss defendant's conviction on count 2 (first degree burglary). As modified, the judgment is affirmed. The trial court is directed to

14

prepare an amended abstract of judgment and forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.


                                                                  \_\_\_\_\_BLEASE_____, J.

We concur:

           \_\_\_\_\_RAYE_____, P. J.

           \_\_\_\_\_MURRAY_____, J.